James F. ARNDT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79S04–9411–CR–1065.

Supreme Court of Indiana.

Nov. 9, 1994.

Timothy P. Broden, Lafayette, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees.

DeBRULER, Justice.

A jury convicted James F. Arndt of committing Class B felony child molestation, I.C. § 35–42–4–3(a), and Class C felony child molestation, I.C. § 35–42–4–3(b). He was sentenced to ten years imprisonment for count I and four years imprisonment for count II, to be served concurrently. In a memorandum decision, the Court of Appeals (Fourth District) affirmed the convictions and sentences. Appellant petitions for transfer of his appeal to this Court. We grant transfer.

## FACTS

On November 18, 1991, Sharon M. was preparing to bathe J.M., her three-year-old son. Sharon placed J.M. in the bathtub, but J.M. jumped out of the tub, saying that his butt hurt him. Sharon asked J.M., "Why is your butt hurting you? ... Did somebody touch you there?" J.M. responded, "Yes." When Sharon questioned J.M. further, J.M. stated that "Greasy Jim" had touched J.M. "Greasy Jim" is a nickname for James Arndt, appellant in this case. Upon additional inquiry, Sharon determined that appellant had also touched J.M.'s penis. Leopoldo, J.M.'s

father, came from an adjoining room and was alerted by Sharon of the accusations against appellant. Within moments, Leopoldo separately posed the question to J.M., "What did he [Jim] do to you?" J.M. answered, "He stuck his finger up my butt." Appellant had lived with Betty Borders, Sharon's mother, for approximately one month.

Sharon reported the alleged child molestation to the Lafayette Police Department. Lieutenant Bryan Baker arrived at Sharon's apartment and directed her to take J.M. to Home Hospital in Lafayette for an examination. Sharon, Betty Borders, and J.M. went to the hospital, where Dr. Richard Shoemaker conducted a physical examination. Shoemaker observed that J.M. became extremely tense when Shoemaker began to examine J.M.'s rectal area. However, Shoemaker reported that he found no physical signs of damage. Following the examination, Sharon went to the police station and gave a statement.

The next day, Detectives Loy and Withers of the Lafayette Police Department questioned appellant. Appellant stated that he had pinched J.M. on the penis and had rubbed J.M.'s penis in order to check whether J.M.'s diaper was wet. Appellant also stated that approximately one month prior to J.M.'s complaint, appellant had reached down and pinched J.M. on the butt, and that appellant's finger "went up" J.M.'s butt by accident.

The Tippecanoe County Prosecutor's Office filed informations charging appellant with two counts of child molesting. The State filed a notice of intent to use the statements of J.M. to his mother under I.C. § 35–37–4–6. The defense filed a motion in limine concerning testimony relating to depraved sexual instinct. At a pre-trial hearing pursuant to the statute, the trial court determined that the statements J.M. made to his parents were admissible. Prior to trial, the State amended its information to include a third count. Count III was a charge of child solicitation, I.C. § 35–42–4–6, committed against Ray Eldon Meyers. Following a jury trial, appellant was convicted of counts I and II child molesting. The State dismissed count III. Appellant received a sentence of 10

years imprisonment for count I, and 4 years imprisonment for count II, with the terms to run concurrently.

## ISSUES

Appellant presents three issues for our review:

I. whether the trial court erred when it admitted the J.M.'s out-of-court statements via the testimony of his mother Sharon and his father Leopoldo;

II. whether the trial court erred in admitting evidence of appellant's depraved sexual instinct; and

III. whether sufficient evidence was presented at trial to support the judgment of conviction.

## DISCUSSION

### Issue I: J.M.'s Out–of–Court Statements

J.M. was three years of age at the time he made the statements. He was four years of age at the time of trial. Appellant was seventy-two years old. J.M. did not testify at trial. At trial, Sharon testified:

[J.M.] jumped out of the tub and was running through the house saying that his butt hurt him.... I said, "Why is your butt hurting you?" And I said, "Did—Did somebody touch you there?" ... and he said yes.... I asked him who had touched him there and he said Greasy Jim, which is Jim Arndt.... I started asking him, "Where did he touch you?" ... I asked him if he touched him, you know, down there around his private parts, you know, his wee-wee, and he said yes.... [H]e told me and my mother that Jim Arndt had stuck his finger up his rear end.

Appellant's counsel objected to the introduction of J.M.'s accusatory statements in the following manner:

[I]f these statements are being offered for the truth of the matter asserted, that is as substantive evidence, in this case then we would object to the hearsay statements of [J.M.] on the basis of the time, content and circumstances of these hearsay statements do not demonstrate their reliability and also that Mr. Arndt has been denied the

opportunity to confront, his right to confrontation, because it was impossible to thoroughly cross examine [J.M.] concerning any of these statements that he had previously made.

The trial court overruled this objection. The trial court also overruled a hearsay objection to J.M.'s accusatory statements as offered by the father, Leopoldo.

 Hearsay is a statement made out-of-court that is offered into evidence to prove the truth of the fact or facts asserted in the statement itself. Ind.Evidence Rule 801(c);[1] *Craig v. State* (1994) Ind., 630 N.E.2d 207. In the present case, J.M.'s accusatory statements fall within this definition of hearsay. They were made out-of-court and both parents repeated the statements at trial, for the purpose of proving the facts asserted in the out-of-court statements, namely that appellant had molested J.M. Such hearsay is not admissible at trial unless it fits within some exception to the hearsay rule. Evid.R. 802 and 803; *Craig*, 630 N.E.2d 207. Exceptions to the hearsay rule exist, because the manner in which certain out-of-court statements are made virtually guarantee their reliability.

The trial court admitted this testimony pursuant to I.C. § 35–37–4–6. In essence, this statute recognizes an exception to the hearsay rule. These statements are arguably admissible under the excited utterance exception, presently Evid.R. 803(2), and physical sensation exception, presently Evid.R. 803(3). This appeal does not consider those possibilities, but deals with the statutory exception the trial court applied.

The history, purpose, and constitutionality of this statute, first enacted in 1984, has been given extensive consideration. *Miller v. State* (1987), Ind., 517 N.E.2d 64 (*Miller I*); *Miller v. State* (1988), Ind., 531 N.E.2d 466 (*Miller II*). *Miller I* dealt with a videotaped statement of a non-testifying five-year-old, taken under questioning by investigating officers, without the presence of the defense, and where the child was unavailable to testify at trial, due to the potential for injury from trial participation. *Miller II* dealt with an audiotaped statement of a non-testifying three-year-old, taken under questioning by investigating officers and workers, without the presence of the defense, and where the child was unavailable to testify at trial, due to incompetence as a witness under the then existing statute. Here, although J.M. did not testify at trial and was unavailable due to incompetence as a witness (as in *Miller II*), J.M.'s statement was made under entirely different circumstances than in either *Miller* case, and was followed, before trial, by a hearing of special character.

█ At the immediate point at which J.M. made these statements, he was naked and wet, in the process of being bathed by his mother, and expressing pain, both in words and by body language. The first "who" question was answered at this point and the second followed shortly. The trial court noted these circumstances, and the fact that J.M. and appellant had been friendly to this point, in making its findings of reliability per the statute. Between arrest and trial, the admissibility hearing was conducted by the court in the full trial mode. The hearing did not take place in front of the jury. J.M. did not, of course, feel the compunction of the oath. He did, however, with difficulty, with variation, and with some body language, repeat his former accusations. There was full physical face-to-face confrontation between appellant and J.M., and defense counsel conducted an untrammeled cross-examination. This questioning produced little direct response. The hearing was audiotaped. We conclude that the statutory procedure was scrupulously followed, and that the application of the statutory exception in these circumstances, leading to the admission of J.M.'s bath-time statements, was consistent with our hearsay rule.

█ Appellant claims that the use of this statement at trial was contrary to the guarantees of the federal constitutional confrontation rights. Absent from the circumstances are (1) confrontation with a declarant at the time competent as a witness, and (2) confrontation that is observable by the trier of fact. In order for hearsay exceptions not to offend

---

1. The Indiana Rules of Evidence did not take effect until January 1, 1994. However, case law at the time of appellant's trial defined hearsay in the very same manner.

the Confrontation Clause of the Sixth Amendment to the United States Constitution, the hearsay evidence must possess substantial indicia of reliability. *Sumpter v. State* (1974) 261 Ind. 471, 306 N.E.2d 95 (citing *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). Reliability can be inferred in cases where the evidence falls within a firmly rooted exception to the hearsay rule, or where there is a showing of "particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. 805, 815, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638, 652 (1990). These guarantees of trustworthiness must "be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 820, 110 S.Ct. at 3149, 111 L.Ed.2d at 656.

■ In the present case, the out-of-court statement statute itself required that the trial court look at the time the statement was made, the specific content of the statement, and the circumstances surrounding the making of the statement in order to test the reliability of the victim's statements. In its docket entry, the trial court listed its reasons for declaring the statements sufficiently reliable:

1. J.M. had no motive to falsify ... J.M. and the defendant got along well and were friendly ...;

2. J.M. made the statements during bath time while ... crying and in pain;

3. J.M. used language ... appropriate to ... a three year old child;

4. J.M. repeated these statement to more than one person he trusts....

These findings strongly support reliability. However, allaying these findings is the finding that J.M. was not able to understand the nature and obligation of an oath and was therefore unavailable for trial. This lack of ability is in the low range in the consideration of whether the bath time statements should be deemed sufficiently reliable to meet federal muster. We conclude that no

federal constitutional error occurred in the admission of the statements.

■ Appellant next claims that the use of this statement was a violation of the right of confrontation guaranteed by Article 1, § 13 of the Indiana Constitution. Despite the admissibility of hearsay pursuant to an exception, "[e]xceptions to the hearsay exclusionary rule are not per se consistent with the State constitutional right to meet the witnesses face to face, but must be separately tested." *Brady v. State* (1991), Ind., 575 N.E.2d 981, 987. The state paradigm for full confrontation differs from the federal one in that it contemplates a face-to-face meeting in which the accused and the witness can see and recognize one another. *Id.* Here, a meeting of that character did occur between appellant and J.M. at the pre-trial hearing, which was recorded and transcribed. During that meeting, J.M. repeated the accusations. In *this* case, we find that applying the statutory exception to the hearsay rule to the bath time statements was consistent with Article 1, § 13, as well as its federal counterpart. The surrogate here for cross-examination of a sworn witness, observable by the trier of fact, is satisfied.

### Issue II: Evidence of Depraved Sexual Instinct

■ Appellant also argues that the trial court improperly admitted certain evidence accusing him of past sexual misconduct. At trial, three different people testified that appellant had molested them. Ray Eldon Meyers, a ten-year-old boy, testified that appellant had accosted Meyers, offering him candy for sex.[2] Paul Scott Cummings, a nineteen-year-old, testified that appellant had molested Cummings approximately 10 years earlier. Christopher Robert Staniford, an eighteen-year-old, testified that appellant had also molested Staniford some ten to twelve years earlier. Appellant's counsel objected to the testimony of Cummings and Staniford, but not Meyer; using the following objection in both instances:

2. The State had charged appellant by information with child solicitation as Count III of this action. However, the jury never learned of this charge, and the State moved to dismiss the charge following this trial.

Your Honor, I'd—I'd object to the—Apparently this is getting into evidence which occurred twelve years ago. I mean, that's the reason that we have statutes of limitations and such like that. This is unreasonable to expect [appellant] to be able to prepare a defense to these allegations at a point twelve years later.

The trial court overruled each objection, but issued identical limiting instructions:

This evidence will be admitted for the sole purpose of showing either the defendant's intent or his sexual propensities and the jury will consider the evidence for that limited purpose alone.

There was no objection lodged to such instructions.

The trial of the case was governed by cases such as *Kerlin v. State* (1970), 255 Ind. 420, 265 N.E.2d 22, which gave great latitude in receiving evidence of past sexual misconduct to show a depraved sexual instinct. Quite reasonably therefore, the objection focused upon the remoteness of the evidence as its weakness, and not upon its tendency to show depraved sexual instinct. The content of the jury instruction clearly supports this understanding of the objections.

Several months after the completion of this trial, this Court decided *Lannan v. State* (1992), Ind., 600 N.E.2d 1334. In *Lannan*, we abandoned the depraved sexual instinct rationale. We also held that sex offense cases pending on direct appeal at the time we issued *Lannan* should receive the same treatment as did Lannan. *Pirnat v. State* (1992), Ind., 600 N.E.2d 1342, *reh'g denied* (1993), 607 N.E.2d 973. However, we did not abandon the requirements of the contemporaneous objection rule. Ind. Trial Rule 46. Appellant filed his praecipe on August 7, 1992, before this Court handed down its decision in *Lannan*. Thus, this appeal is subject to our *Lannan* holding. At trial, it is evident that appellant, in objecting that the evidence of Cummings and Staniford was too remote, did not claim any impingement from application of the then-governing pre-*Lannan* rule, which broadly sanctioned evidence of prior sexual misconduct. We therefore conclude that appellant is not entitled to the remedy afforded *Lannan*, and that there was no error.

### Issue III: Sufficiency of the Evidence

Finally, appellant argues that the evidence presented was not sufficient to sustain a conviction. In determining this question we do not weigh the evidence nor resolve questions of credibility, but look to the evidence admitted at trial and reasonable inferences therefrom that support the verdict. *Vest v. State* (1993), Ind., 621 N.E.2d 1094. The conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Id.*

Here, the evidence presented to the jury included the victim's statements expressing pain and accusing appellant of assaulting him. Appellant lived with the victim's grandmother, who often cared for the victim. Appellant had assisted the grandmother on several occasions. The child had just returned from his grandmother's, where he had been in the presence of appellant, when he made the bath time accusations. Appellant's own admissions were that in the past thirty days, the victim had come to his room at the grandmother's house on several occasions, and that he had rubbed the boy's penis in checking on whether his diaper was wet, and also inadvertently pinched the boy on his penis and ran his finger into the boy's anus. Though the medical examiner could not verify penetration, the child's reactions were indicative of one. The evidence of guilt was sufficient to warrant the jury verdict.

The convictions are affirmed.

SHEPARD, C.J., and GIVAN, DICKSON and SULLIVAN, JJ., concur.