**James A. PIERCE, Appellant**
**(Defendant below)**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 54S01–9511–CR–01319.

Supreme Court of Indiana.

Feb. 28, 1997.

Sidney J. Tongret, Public Defender's Office, Montgomery County, Crawfordsville, for Appellant.

Pamela Carter, Attorney General of Indiana, and Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

A jury convicted defendant James A. Pierce of criminal confinement[1] and child molesting,[2] both class C felonies. The trial court sentenced Pierce to the maximum term of eight years for each offense enhanced by twelve years on each for being a habitual offender,[3] served consecutively, for an executed term of forty years. In this appeal, Pierce challenges the admissibility of testimony of witnesses reporting the child victim's statements and also the admissibility of a videotape of an interview with the victim. Pierce asserts that the procedures governing the admission of out-of-court statements by "protected persons" were not followed in this case and that his right under the Indiana Constitution to confront his accuser was violated. We find no reversible error but accept the invitation to give guidance to trial courts as to procedures to be followed under IND.CODE § 35-37-4-6.

Pierce contended below, and the State conceded, that it was error to impose consecutive habitual offender enhancements. The Court of Appeals affirmed the convictions but remanded for a sentencing order reducing Pierce's sentence to twenty-eight years. *Pierce v. State*, 653 N.E.2d 1072 (Ind.Ct.App. 1995) (mem.). We granted transfer and now affirm the convictions.

### Factual & Procedural History

On the morning of November 18, 1993, three-year-old K.D. and her mother went to the Wal–Mart store in Crawfordsville to shop for Christmas presents. Upon arriving at the store K.D. separated from her mother to look at toys. While stocking shelves in the store that morning, Wal–Mart employee Cynthia Robinson had a two to five minute conversation with K.D. about toys, among other things, and then K.D. "ran off." A few minutes later, Robinson saw defendant Pierce walk up to K.D. and say "come on, come on." As the two walked off holding hands, Robinson assumed that Pierce was K.D.'s father. At approximately 10 a.m. another Wal–Mart employee pricing toys, Teresa Latrell, saw Pierce leave the same aisle with K.D. in a hurried fashion and walk towards the hardware department. A few minutes later Robinson heard the mother calling K.D.'s name and told her that K.D. had just left the toy department with her father. The mother responded that K.D.'s father was not at the store and she, Robinson, Latrell, and another employee immediately began a search for K.D.

---

1. IND.CODE § 35-42-3-3 (1993).

2. IND.CODE § 35-42-4-3 (1993).

3. IND.CODE § 35-50-2-8 (1993).

After about fifteen minutes, Wal–Mart employees decided to call a "Code Adam," an emergency procedure requiring that the store's doors be locked until a missing child is found. In accordance with the Code Adam, all employees were given a description of K.D. and a more thorough search for her ensued. While the search was in progress, Michael Zimmerman, a Wal–Mart auto mechanic, saw Pierce drive up near the auto repair garage in the rear of the store and get out of his car with K.D., whom Zimmerman recognized from the Code Adam description. Auto service manager Kevin Jarvis, who opened the auto shop door to let Pierce and K.D. back into the store, observed that K.D.'s face "was tear stained like she had been crying." While Jarvis was attending to K.D., Pierce left the store through the rear door, drove around to the front of the store, parked, and went to the courtesy desk.

Meanwhile Margaret Bonebrake, a merchandise assistant in the auto department, brought K.D. from the auto department to the front of the store where K.D.'s mother was waiting. As they walked together, Bonebrake asked K.D. how she got outside and K.D. stated that "the man took her." Bonebrake also observed that K.D. appeared upset and might have been crying. After K.D. was reunited with her mother at the service desk, K.D., her mother and Robinson went into a private office in the front of the store. Robinson testified that when the three were together the mother "asked [K.D.] where she was at and she said a man took her outside." At some unspecified point after K.D. returned to the store, K.D. told her mother that a man "took her out into his car ... undid her belt and checked to see if she was wet." It is unclear from the record whether K.D. and her mother were ever alone in the private office that morning and, if so, whether they discussed anything during that time.

When the Code Adam procedure was implemented, Officer Sam Dickerson, Sergeant Ron Newlin, and Sheriff Dennis Rice of the Montgomery County Sheriff's Department were dispatched to Wal–Mart to investigate K.D.'s disappearance. Dickerson was the first officer to speak with K.D. and her mother, both of whom were still waiting in the private office when he arrived.[4] Dickerson observed that K.D. was crying and appeared "pretty excited." Dickerson began questioning the mother first, but K.D. interrupted them and told Dickerson that "she met a man in the store, the man took her out to his car and while inside the car the man asked her if she liked toys. . . ." Dickerson further testified to K.D.'s account: "[A]t that point he [Pierce] told her he was going to check and see if her pants were wet, he unbuckled her pants and inserted his hand." In describing the incident to Dickerson, K.D. made gestures with her hand outside her clothes in a downward motion to the front part of her lower torso. Sheriff Rice arrived on the scene a few minutes later. Rice also interviewed K.D. and her mother in a conference room in the back of the store. Rice noticed that K.D. appeared "somewhat scared" and "very excited." K.D. told Rice that a man undid her belt and "checked to see if I peed my pants." In describing the incident to Rice, K.D. unfastened her belt and stuck her hand inside her pants.

At approximately the same time K.D. and her mother were being interviewed by Rice and Dickerson, Sergeant Newlin interviewed Pierce at the courtesy desk. Pierce told Newlin that K.D. had followed Pierce to his car and that he took her back to the store by driving her to the auto service department. Pierce agreed to go with the officers to the local sheriff's department to answer more questions about the incident. During the ride to the police department Pierce volunteered the same story to Officer Dickerson.

Pursuant to Sheriff Rice's recommendation, the mother took K.D. to a doctor for a physical examination. The exam revealed no injuries to K.D. After the doctor's visit, the mother took K.D. to the police department for a videotaped interview with Rice. The interview began shortly after 2:30 p.m. that same day with the mother present. On No-

---

**4.** No witness could testify to the exact time of K.D.'s disappearance and return. The lone temporal reference of much reliability is Officer Dickerson's testimony. He stated that he received a dispatch at 10:06 a.m. instructing him to go to Wal–Mart and that he arrived there at approximately 10:21 a.m.

vember 29, 1993 Pierce was charged with confinement and child molesting. After release on bail, Pierce disappeared for six weeks and was the subject of an extensive manhunt that garnered national television publicity. On January 3, 1994 Pierce turned himself in to authorities. On September 2, 1994 a jury convicted Pierce on both counts. The trial court, after considering aggravating and mitigating circumstances, found that Pierce was a habitual offender and sentenced him to the maximum term for both offenses. Pierce appealed. We have jurisdiction under Indiana Appellate Rule 11(B)(3).

### Issues Presented

Pierce presents a number of questions for decision that we consolidate and restate as follows:

I. Did K.D.'s statements at Wal–Mart to her mother and the police officers and the videotaped interview exhibit sufficient indications of reliability so as to satisfy the "protected person" statute, IND.CODE 35–37–4–6?

II. Was K.D. "available for cross-examination" at the combined competency and admissibility hearing as required by the protected person statute?

III. Even if the trial court's rulings complied with the protected person statute, was Pierce deprived of his right under the Indiana Constitution to meet witnesses face to face?

This case raises issues under IND.CODE § 35–37–4–6, which permits admission of out-of-court statements of "protected persons" under certain conditions. The trial court relied on this statute to admit the only direct evidence that a molestation occurred—first, K.D.'s statements at Wal–Mart to her mother and the police officers relating what Pierce had allegedly done to K.D. and, second, the videotaped interview with K.D. later that day. Put concisely, Pierce claims the

statute was not followed and, even if it was, Pierce contends the statute is inconsistent with the Indiana Confrontation Clause.[5]

### I. Statements Admitted Under the Protected Person Statute

■ Pierce challenges the trial court's decision to admit statements K.D. made at Wal–Mart to her mother, Officer Dickerson and Sheriff Rice. Pierce also contests the admissibility of the videotaped interview with K.D. If admitted and credited, this evidence shows that Pierce took K.D. to his car, unbuckled her belt, and put his hand down her pants. The testimony and videotape are hearsay, and therefore generally inadmissible, because the disputed statements were all made outside the courtroom and were offered to prove that Pierce molested K.D. The trial court relied on the "protected person" statute to admit each of these pieces of evidence.

### A. Requirements for admissibility under the protected person statute.

■ The Legislature has created special procedures for introducing evidence that is "not otherwise admissible" in cases involving crimes against children and the mentally disabled. See IND.CODE § 35–37–4–6 (1993 & Supp.1994).[6] To admit evidence under the "protected person" statute, the court must make a number of findings in hearings conducted outside the jury's presence. The statement or videotape must be made by a person who at the time of trial is a "protected person," i.e., a person who is either under the age of fourteen or mentally disabled at the time of trial. § 6(b). The protected person must be found to be "unavailable" either because of incompetence by reason of inability to understand an oath or for reasons related to the well being of the witness based on professional testimony. § 6(d)-(e). The

---

5. Article I, Section 13 of the Indiana Constitution, unlike its federal counterpart the Sixth Amendment, does not use the term "confront." Rather, it gives a right to "meet the witnesses face to face." Nonetheless, consistent with precedent, we will refer to it as the Indiana Confrontation Clause. *Brady v. State,* 575 N.E.2d 981, 989 (Ind.1991); *Miller v. State,* 517 N.E.2d 64, 68 (Ind.1987).

6. Pierce does not argue that IND.CODE § 35–37–4–6, by providing for the admission of hearsay, conflicts with the Indiana Rules of Evidence. Ind. Evidence Rule 802 prohibits admission of hearsay "except as provided by law or by these rules." The statute is a provision "by law," and does not conflict with Rule 802.

statement or videotape must concern an act that is a material element of the charged offense. § 6(c). The protected person must attend the hearing and either testify at trial or, if found to be unavailable as a witness, be available for cross-examination either at the hearing or when the statement was made. § 6(d)-(e). The time, content, and circumstances of the statement or videotape must be found to provide sufficient indications of reliability. § 6(d)(1).[7]

In many child molestation prosecutions, as in this case, the account of the victim is important—and sometimes the only—evidence as to the occurrence of a crime or the identity of the perpetrator, or both. The victim is often an incompetent witness if the statute comes into play. Trial courts consequently must use special care when making findings of sufficient indications of reliability under the statute because these findings act as the sole basis for finding the trustworthiness that permits introduction of otherwise inadmissible hearsay. Considerations in making the reliability determination under the statute include the time and circumstances of the statement, whether there was significant opportunity for coaching, the nature of the questioning, whether there was a motive to fabricate, use of age appropriate terminology, and spontaneity and repetition. *See Idaho v. Wright,* 497 U.S. 805, 821–22, 110 S.Ct. 3139, 3149–50, 111 L.Ed.2d 638 (1990) (listing factors bearing on whether hearsay statements exhibit particularized guarantees of trustworthiness for Sixth Amendment purposes).[8] Lengthy and stressful interviews or examinations preceding the statement may cast doubt on the reliability of the statement or videotape sufficient to preclude its admission. *Miller v. State,* 531 N.E.2d 466, 470 (Ind.1988) ("*Miller II* "). There are undoubtedly many other factors in individual cases.

Finally, although the original version of the statute required corroborative evidence before admitting out-of-court statements, *see* 1984 Ind. Acts, P.L. 180, § 1, it is now clear that corroboration should not be considered in evaluating the reliability of the statement. The current version of IND.CODE § 35–37–4–6, unlike its predecessors, does not limit admission of out-of-court statements to cases in which there is independent corroborative evidence of the crime. *See* 1990 Ind. Acts, P.L. 37, § 22, *codified at* IND.CODE § 35–37–4–6 (1993).[9] In light of all these factors, and for the reasons set forth below, we find no reversible error in this case.

B. *Statements recounted by the mother and police officers.*

Pierce contends the testimony recounting K.D.'s statements to her mother and to Dickerson and Rice failed to exhibit sufficient indications of reliability as the statute requires, and therefore was erroneously admitted.[10] The morning of the trial, the court conducted a combined competency and admissibility hearing. After finding K.D. in-

---

7. The statute in force at the time of Pierce's trial is the version discussed in this opinion. Two months before the trial certain amendments to IND.CODE § 35–37–4–6 took effect. *See* 1994 Ind. Acts, P.L. 142, § 7 (effective July 1, 1994). As explained *infra,* adjudication of this appeal is complicated by the fact that the trial court appears to have held the combined competency and admissibility hearing under the old version of the statute. The 1994 amendments, which did not alter the requirement of a finding of "sufficient indications of reliability," come into play only in our discussion in Parts II and III on cross-examination and the constitutionality of the statute.

8. Pierce does not assert any claim based on the Sixth Amendment. Nonetheless, the statute and its construction are guided and constrained by federal as well as state constitutional considerations.

9. This is consistent with federal constitutional doctrine. The 1990 amendment eliminating the need for corroborative evidence took effect three months before the decision in *Wright,* in which the U.S. Supreme Court specifically disapproved of "bootstrapping" the admission of otherwise unreliable testimony by pointing to corroborative evidence. *Wright,* 497 U.S. at 823, 110 S.Ct. at 3150. *Wright,* also a molestation case, held that the reliability of an unavailable child's statement must be judged on its own merits and cannot be bolstered by corroborative proof. *Id.* at 822–24, 110 S.Ct. at 3150–51.

10. The trial court did not consider whether the statements might also be admissible under Evid.R. 803(2) as "excited utterances." Because we find no error under the protected person statute, we need not consider that issue here.

competent to testify, the court found that K.D.'s statements as reported in the police officers' and mother's testimony were sufficiently reliable to be admitted under the statute. Specifically, the court concluded that these statements were spontaneous and occurred "a very short time" after the alleged molestation. The court found that K.D. was still excited when the statements were made and that there was no time for an adult to plant a story in her head. This Court has observed that "[p]erhaps the greatest weakness of children as prosecuting witnesses may be their susceptibility to leading questions...." *Miller v. State,* 517 N.E.2d 64, 69 (Ind.1987) (*"Miller I"*). The trial court's finding that K.D.'s answers were not prompted or suggested is supported by the record. Officer Dickerson testified both at the admissibility hearing and at trial that K.D. interrupted his interview with her mother to tell the officer what Pierce had done to her. K.D. repeated essentially the same account to her mother and Sheriff Rice shortly thereafter. The mother, who was the only person alone with K.D. between the events reported and K.D.'s spontaneous statements, was available for cross-examination at the hearing as to the potential for any implantation or cleansing of K.D.'s story. The trial court made a judgment call based on its overall assessment of witness credibility and the substance of the mother's and the officers' testimony. We see no abuse of discretion.[11]

C. *The videotaped interview.*

■ The videotape of K.D. at the police station is a different matter. Several factors could call into question the reliability of this evidence. K.D.'s videotaped interview with Rice did not occur until several hours after the alleged molestation. This passage of time tends to diminish spontaneity and increase the likelihood of suggestion. The interview took place after K.D. went through a potentially disorienting physical examination at a doctor's office. Moreover, K.D.'s mother suggested several answers to K.D. during the interview and asked her leading questions. Despite these considerations, the trial court found that K.D.'s statements were reliable because they were "consistent with what she had said before," were "sufficiently spontaneous" and were "in the victim's own words." Pierce compares Rice's and the mother's questioning of K.D. to the "exhausting, stressful, and coercive" interview setting we condemned in *Miller II,* 531 N.E.2d at 470. However, Pierce points to nothing on the videotape that would brand K.D.'s statements as untrustworthy. Indeed, Pierce offers nothing to question the trial court's conclusions and does not include the videotape in the record. Assuming without deciding that the videotape should not have been admitted, there is also no showing that the videotape was more than cumulative of the statements K.D. made immediately following the incident. Unlike *Miller I,* the tape is not the only direct evidence of the events. Moreover, it is impossible on this record to conclude that the tape was even intelligible, much less "straightforward and convincing" as in *Miller I,* 517 N.E.2d at 74. Pierce has not established reversible error on this point.

In this case there was no cross-examination of the victim at the hearing. If that cross-examination takes place and a videotape is to be admitted, it is within the trial court's discretion, and we believe the better practice, to permit the cross-examination to be videotaped and shown with the tape of the victim's statements. The basis for admitting the tape of the victim's statement is its reliability as determined by the trial court, not the cross-examination. In this respect the tape is qualitatively the same as testimony recounting out-of-court statements. Nonetheless use of a tape of the victim smacks of permitting the victim to become a witness, albeit an electronically reproduced witness. Although the statute does not explicitly speak to the point, under those circum-

---

11. Pierce asserts that *Modesitt v. State,* 578 N.E.2d 649 (Ind.1991) forbids the admission into evidence of the hearsay statements K.D. made at Wal–Mart to her mother, the police officers and store employees Robinson and Bonebrake. This argument is without merit because *Modesitt* involved the admissibility of prior statements of witnesses who did testify, not the admissibility of statements by an unavailable person, as in this case. Prior statements of witnesses are not hearsay in the first place, if admitted via Evid.R. 801(d)(1).

stances fairness to the defendant will normally require giving the defendant the option to display to the trier of fact a tape of any cross-examination done either during the hearing or during the taping of the statement itself. As with any tape offered at trial, the trial court may order or the parties may agree to editing of objectionable portions of the tape. The points made in this paragraph are in exercise of our supervisory powers and are not derived from constitutional jurisprudence. They are not applicable to proceedings conducted before publication of this opinion.

## II. Was K.D. Available for Cross–Examination?

■ Pierce also contends that he was denied an opportunity to confront K.D. at the hearing. Specifically, Pierce argues that the statute required the trial court affirmatively to offer him a pretrial opportunity to cross-examine K.D. after finding her to be incompetent. K.D. testified at the combined admissibility and competency hearing held the day before the trial. Pierce and his attorney were present. At the hearing the State briefly examined K.D. but was unable to elicit many cogent answers. Pierce's counsel made no effort to question K.D. when she was on the witness stand and did not object to the State's proceeding to the next witness. At the conclusion of the State's questioning of K.D., the court neither affirmatively offered nor affirmatively denied Pierce the chance to cross-examine her. The record is simply silent on this point. At the end of the hearing, the court found K.D. to be incompetent because she was unable to understand the nature and obligation of an oath. K.D. was therefore deemed "unavailable" within the meaning of the statute. K.D.'s mother and the two police officers also testified at the hearing. Pierce's attorney cross-examined both Sheriff Rice and Officer Dickerson, but declined to cross-examine the mother. The court then began voir dire and the trial started later that day.

In a brief filed the day after the hearing (the first full day of trial), Pierce argued that the videotape and hearsay statements were inadmissible because the court had not affirmatively offered Pierce a pretrial opportunity to cross-examine K.D. after finding her incompetent. After the State had called all its witnesses and entered all its exhibits, the court took up the issue Pierce raised in his brief. The court ruled that K.D. would be made available for cross-examination, outside the presence of the jury, regarding all her statements. The State produced K.D. the following morning for this purpose but Pierce declined to cross-examine her, contending that the questioning came too late to cure the alleged error. The State rested its case, the defense offered no evidence, both sides made closing arguments, and the jury returned guilty verdicts on both counts.

### A. Legislative and judicial history of the protected person statute.

IND.CODE § 35–37–4–6 has been amended several times since its enactment in 1984, often in response to judicial decisions. A cursory review of this history reveals that Pierce's argument about the timing of cross-examination is unpersuasive. Until 1990, the statute prescribed only that the protected person "attend" the hearing and imposed no explicit requirement that the child testify or be subjected to cross-examination at the hearing. In Miller I, we held that cross-examination was nonetheless implicit in the statutory scheme. Miller I, 517 N.E.2d at 72. We reaffirmed this holding a year later in Miller II, where we reiterated that if a pretrial statement of an unavailable child victim is to be used at trial, the defendant and defense counsel must be afforded "full right to cross-examine and confront the witness. This would include the opportunity for a physical, immediate, face-to-face confrontation." Miller II, 531 N.E.2d at 470. The Court of Appeals in Shoup v. State, 570 N.E.2d 1298 (Ind.Ct.App.1991) dealt with a question left open by Miller I and Miller II: at what point in the proceeding must this opportunity for confrontation be afforded? In Shoup, the trial court conducted the hearing in two stages, the first dealing with competence and the second with admissibility of the reports of the child's statements. After the State examined the child as to competence the court gave the defendant the same opportunity, but his lawyer declined. The court then declared the child incompetent

and held the admissibility stage of the hearing. *Shoup* held that "some time after the court determines that the child is incompetent or unavailable for trial, the defendant must affirmatively be given the opportunity to cross-examine the child concerning the substance of the out-of-court statement or videotape." *Id.* at 1303.

Pierce relies exclusively on *Shoup* and the *Miller* decisions to support his argument that he was denied his statutory right of confrontation. Pierce contends the trial court should have affirmatively offered him the chance to cross-examine K.D. after the competency determination. However, Pierce's reliance on *Miller I, Miller II* and *Shoup* is misplaced because all these decisions construed a version of the statute that was no longer in effect at the time of Pierce's trial. In 1990, the Legislature deleted the requirement that the child "attend" the hearing and instead prescribed that evidence could be admitted under the statute only if the unavailable child either "testifies" at the hearing or was available for cross-examination when the statement was made. *See* 1990 Ind. Acts, P.L. 37, § 22. The "testifies" language was changed in 1994 to provide that the child must be "available for cross-examination" either "at the hearing" or "when the statement or videotape was made." *See* 1994 Ind. Acts, P.L. 142, § 7 (effective July 1, 1994); *codified at* IND.CODE § 35–37–4–6(e) (Supp.1994). To the extent *Shoup*'s reference to an opportunity to cross-examine at "some time" after the competency determination suggested that confrontation must take place after the combined hearing, that case is no longer good law. The 1994 amendment, which went into effect two months before Pierce's trial began,[12] effectively overruled *Shoup* in that respect.

The statute clearly says the child must be available for cross-examination "at the hearing described in subsection (d)(1)." IND. CODE § 35–37–4–6(e)(1) (1993 & Supp.1994). This hearing is clearly the admissibility hearing, if separate hearings are conducted, or the combined hearing if that procedure is followed. A combined hearing was held without objection in this case. We do not find a requirement that K.D. should have testified more than once. Multiple examinations of the child are not only not required; they are to be avoided unless necessary: "The goal of the statute is to reduce the child's emotional trauma caused by numerous court appearances, not to guarantee that the child will never have to face the defendant." *Miller I*, 517 N.E.2d at 73. These humanitarian considerations, as well as judicial economy, favor cross-examination of the child when the child takes the stand at the combined hearing, if there is one or at the admissibility hearing if not. If the child does not testify at the hearing, the child must nonetheless be "available." Trial courts are of course free to determine the need for and appropriateness of separating the phases of the hearing or of recalling the witness. But the language of the current statute requires no more than one appearance.

## B. *K.D. was available for cross-examination and Pierce waived the right.*

█ It is apparent from the record that both the parties and the court were unaware of the 1994 amendments. Pierce cited the 1990 version of the statute in his brief asserting a *Shoup* right to cross-examination before trial but after the competency determination. In response, the court affirmatively gave Pierce the opportunity to cross-examine before conclusion of the trial but not at the hearing contemplated by the statute. Nonetheless, because the 1994 statute was in effect at the time of trial, there was no error if K.D. was "available for cross-examination" at the hearing as required by the then controlling version of IND.CODE § 35–37–4–6. K.D. testified at the hearing. There are no signs in the record, and Pierce does not contend, that the court blocked Pierce from questioning K.D. or suggested that cross-examining her would not be allowed. Rather, there simply was no cross-examination of K.D. without any statement by the court or counsel as to why or whether that was required. Pierce's counsel did not interpose an objection at the hearing or ask to examine K.D. before the next witness was called. In this respect, this case is in sharp contrast to

12. Pierce's trial started on August 31, 1994 and ended on September 2, 1994.

*Miller I*, where the trial court made clear no examination of the child would be permitted. *Miller I*, 517 N.E.2d at 73.

■ Under these facts, we conclude that K.D. was "available for cross-examination" and that Pierce waived his right to question her. Courts have significant leeway in determining how, and to what extent, they allow witnesses to be questioned on cross-examination. Evid.R. 611; *Fox v. State*, 506 N.E.2d 1090, 1093 (Ind.1987). Here, K.D. was on the witness stand and the court did not prevent the defense from questioning her. This satisfies the statutory requirement of "availability." Notwithstanding K.D.'s availability, Pierce conducted no cross-examination. Exercise of cross-examination is primarily the prerogative of the defendant. In general, failure to request the opportunity to cross-examine a witness at trial called by the opposing party waives the right. *Webb v. State*, 266 Ind. 554, 555, 364 N.E.2d 1016, 1018 (1977); *Trout v. Trout*, 638 N.E.2d 1306, 1308 (Ind.Ct.App.1994), *trans. denied.* As we have stated, "[a] trial judge has no affirmative duty to ascertain whether a defendant is passing up cross-examination because of tactical considerations or through oversight or error." *Webb*, 364 N.E.2d at 1018. The same rule has been applied in the federal courts, *e.g., United States v. Cook*, 530 F.2d 145, 153 (7th Cir.1976), and with good reason. It is common knowledge that a witness called by the other side in any judicial proceeding can usually be cross-examined. Indeed, Pierce's counsel questioned two of the three other witnesses for the State that took the stand during the hearing. When K.D. was examined, however, Pierce chose to do nothing. Pierce claims he was relying on *Shoup* and was waiting for the court to offer him a pretrial opportunity for cross-examination. This decision to decline questioning is as readily explainable as a tactical judgment that nothing useful could be accomplished with such a small child. *See Brookhart v. Janis*, 384 U.S. 1, 8, 86 S.Ct. 1245, 1249, 16 L.Ed.2d 314 (1966) (calling decision to cross-examine specific witness "very clearly one for counsel alone" and a

"tactical choice") (Harlan, J., concurring). Indeed, Pierce also declined to cross-examine K.D.'s mother at the hearing. Whatever his motives, Pierce's failure to request an opportunity to question K.D. at the hearing, and his failure to interpose an objection to the closing of the hearing without cross-examination, constituted a waiver of the right.

■ The State contends that Pierce once more waived any right to cross-examination near the end of the trial when K.D. was produced for this explicit purpose and he declined to question her. We cannot agree. First, the statute provides for cross-examination "at the hearing." Second, at that point in Pierce's trial the jury had already heard the statements admitted under the authority of the statute. Cross-examination at that stage, even if effective or revealing a basis for excluding the statements, would come too late. However, no reversal is required because K.D. was "available" at the hearing within the meaning of the statute for the reasons we have explained.

### III. Was Pierce Denied His Rights Under the State Confrontation Clause?

Pierce next challenges the constitutionality of the protected person statute, contending that the lack of cross-examination of K.D. in front of the factfinder is a constitutional infirmity mandating reversal.

#### A. IND.CODE § 35-37-4-6 is not invalid on its face.

*Miller I* upheld the then current version IND.CODE § 35-37-4-6 against a facial constitutional challenge, but held that a new trial was required because the defendant there had been denied his statutory right to cross-examine the child. *Miller I*, 517 N.E.2d at 73. In addition to finding a statutory right, *Miller I* stated that admitting otherwise inadmissible evidence under the statute "must be accompanied by some opportunity for cross-examination if it is to comply with the Indiana Constitution." [13] *Id. Miller I* made

---

13. In this respect, Indiana's statutory and constitutional right to confront an unavailable child victim is more generous than its federal constitutional counterpart. After our decisions in *Miller I* and *Miller II*, the U.S. Supreme Court in *Idaho v. Wright* addressed confrontation issues under

clear that exercise of the confrontation right outside the presence of the jury could satisfy the "opportunity" for confrontation required by the state constitutional right to "meet the witnesses face to face." IND. CONST. art. I, § 13. The statute—including the version upheld in *Miller I*—has always expressly provided that the admissibility hearing take place *outside* the presence of the jury. IND. CODE § 35–37–4–6(d)(1)(A) (1993 & Supp. 1994).

▮▮▮▮▮ We reach the same conclusion as to the current version of the statute in light of the intervening precedents. First, although judicial development of Indiana's Confrontation Clause is of relatively recent vintage compared with its federal counterpart, *see Miller I*, 517 N.E.2d at 68–69, the Indiana right contains a unique face to face element requiring that the witness and the accused be able to see and recognize each other. *Brady v. State*, 575 N.E.2d 981 (Ind. 1991). The state right also protects cross-examination (usually by the defendant's attorney) and distinguishes it from the need for physical confrontation (by the defendant). The latter is separate and apart from the former. *Id.* at 988. Although testimony about out-of-court statements creates special reliability concerns, hearsay is not ipso facto a violation of the Indiana Constitution. *Miller I*, 517 N.E.2d at 71; *Sumpter v. State*, 261 Ind. 471, 481–82, 306 N.E.2d 95, 102–03 (1974). Indeed, in the case of typical hearsay where a live witness reports what the declarant said the constitutional reference to meeting the "witness" is literally fulfilled because the witness reporting the hearsay is on the stand.[14] Otherwise stated, in that situation

the declarant is not the witness. Nonetheless, hearsay exceptions must be "separately tested" for a violation of the Indiana confrontation right. *Brady*, 575 N.E.2d at 987.

*Arndt v. State*, 642 N.E.2d 224 (Ind.1994) is the most recent case in this Court involving a constitutional challenge to the statute. In *Arndt*, we held that the Indiana Confrontation Clause was not violated where the child witness repeated his former allegations at the competency hearing, in the presence of the defendant, and was subject to an "untrammeled" cross-examination. *Id.* at 227. We concluded that "[t]he surrogate here for cross-examination of a sworn witness, observable by the trier of fact, is satisfied." *Id.* at 228. Here, as in *Arndt*, a face to face meeting between the child and the defendant occurred outside the presence of the jury and there was an opportunity for cross-examination. By referring to the protected person statute as an acceptable "surrogate," *Arndt* implicitly reaffirmed the *Miller I* view that the Indiana Confrontation Clause did not require this cross-examination to occur in front of the factfinder.

Although the Indiana Confrontation Clause "places a premium upon live testimony of the State's witnesses in the courtroom during trial," the right is not absolute. *Brady*, 575 N.E.2d at 987–88. Under IND.CODE § 35–37–4–6, the defendant has two safeguards against admission of untrustworthy evidence: (1) the right to cross-examine the child at the hearing; and (2) the requirement that the court find the statement or videotape to exhibit sufficient indications of reliability. Cross-examination at the hearing affords the

---

facts similar to those present here. *Wright* also involved the propriety of admitting hearsay statements by a child who had been declared incompetent to testify at trial. *Wright* held that a hearsay declaration by an unavailable child may be admitted consistent with the Sixth Amendment's Confrontation Clause if one of two conditions is met: (1) the statement falls within a firmly-rooted hearsay exception; or (2) the statement exhibits particularized guarantees of trustworthiness. Regarding how the determination of trustworthiness should be made, the Supreme Court in *Wright* stated that "we do not believe the Constitution imposes a fixed set of procedural prerequisites" for admitting out-of-court statements by children regarding sexual abuse. *Wright*, 497 U.S. at 818, 110 S.Ct. at 3148. Therefore, in granting a right to cross-examine

the child at a special hearing, Indiana's protected person statute goes beyond what is required under the Sixth Amendment. We make this point here strictly for comparative purposes and not to suggest that *Wright* impacts the precedential value of our prior cases construing the Indiana Confrontation Clause or our decision today.

14. It is doubtful that the framers of the Constitution considered the issues raised by testimony from very young persons. The 1852 code, adopted only one year after the Indiana Confrontation Clause was adopted as part of the State Constitution of 1851, included a statutory declaration that a child under age ten was presumed to be incompetent. 2 R.S., p. 81, § 239 (1852).

defendant an opportunity to reveal weaknesses or inconsistencies in the child's memory or account of events. And as we have provided today, this testimony can be videotaped and later shown to the jury along with the videotape or other statements admitted under the protected person statute. The assumption underlying any admission of hearsay is that cross-examination of the declarant will not occur before the factfinder but that other safeguards are sufficient to assure reliability and therefore admissibility. The quest for truth sometimes requires admitting statements from witnesses unavailable for various reasons—death and incompetence among them. The statute, designed to deal with specific crimes that, by their nature, may be provable only by statements of small children or the mentally disabled, goes beyond federal constitutional standards in mandating *any* confrontation. By ensuring a right of cross-examination and requiring findings of reliability, the statute guards against the harm the hearsay rule was designed to prevent—convictions based on flimsy evidence. In sum, the statute constitutionally substitutes for the trustworthiness normally established by cross-examination in front of the factfinder.

B. *The statute is not unconstitutional as applied in this case.*

 In construing a prior version of the statute, we held that the defendant must have an *opportunity* to cross-examine the victim for the statute to pass state constitutional muster. *Miller I,* 517 N.E.2d at 73. However, this opportunity does not have to be seized or successful and the right can be waived. *State v. Owings,* 622 N.E.2d 948 (Ind.1993). A defendant cannot claim loss of the right to meet witnesses "face to face" if a face to face meeting took place and no questions were asked. We have already concluded here that the requirements of IND.CODE § 35-37-4-6 were met in Pierce's case because K.D. was "available for cross-examination" within the meaning of the statute. This availability is the "opportunity" to confront *Miller I* deemed constitutionally required.

What happened in this case is not unlike the facts in *Owings.* There, we held that the defendant had a state constitutional right to confront a witness at a deposition if the deposition was used at trial and the witness was unavailable to give live testimony. The defendant's lawyer wrongly believed that the defendant was banned from entering the site of the deposition, but the lawyer did not ask to enter or move the deposition elsewhere. Under those circumstances, we found that the right of confrontation had been waived. *Owings,* 622 N.E.2d at 953. Here, Pierce apparently believed he was entitled to some later opportunity under *Shoup* and for this reason made no effort to question K.D. Although different from *Arndt* in that cross-examination there actually took place, Pierce in this case had "opportunity" to confront K.D, indeed even more opportunity than in *Owings.* K.D. testified at the hearing and the court never indicated, either explicitly or implicitly, that cross-examination would not be allowed. Pierce was presented with his constitutional right to confront K.D. in conformity with the Indiana Constitution. By not questioning her, Pierce waived the right. Since we find no constitutional error, Pierce's claim that the trial court should have granted his request for a mistrial lacks merit.[15]

**Conclusion**

We summarily affirm the decision of the Court of Appeals with respect to all other issues decided below and not specifically addressed in this opinion. App.R. 11(B)(3). The jury convictions of defendant James A. Pierce for criminal confinement and child molesting are affirmed. The case is remanded to the trial court for a sentencing order in conformity with the opinion of the Court of Appeals.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

15. Although harmless error analysis does not come into play because we found no error, it is difficult to see how cross-examination of K.D. at the hearing would have affected the admissibility and competency determinations. The State's direct examination yielded few cogent answers for Pierce to challenge on cross-examination and K.D. otherwise was largely inarticulate.