Michael HENDRICKS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 49A04–0307–PC–344.

Court of Appeals of Indiana.

June 8, 2004.

Rehearing Denied July 21, 2004.

Joseph M. Cleary, Hammerle & Allen, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Michael Hendricks appeals from the denial of his petition for post-conviction relief. He presents one issue for our review, whether he was denied the effective assistance of appellate counsel.

We affirm.

The facts of the case, as recited by this court in a memorandum decision affirming Hendricks' conviction upon direct appeal, follow:

"The evidence most favorable to the verdict reveals that 17 year-old Gena Hewitt changed her two year-old daughter H.'s diaper and put her to bed at 10:00 p.m. on September 14, 1994. Hewitt noticed nothing unusual about H.'s vagina. At midnight, Hewitt's boyfriend, 23 year-old Michael Hendricks ('Hendricks'), visited Hewitt at the house that Hewitt and H. shared with Hendricks' sister-in-law, Stephanie Hendricks ('Stephanie'). Hewitt and Stephanie asked Hendricks to drive them to the grocery store. Hendricks refused; however, he allowed the young women to borrow his car. While Hewitt and Stephanie went to the store, Hendricks stayed with H., who was asleep in the room that she shared with Stephanie.

The following morning when Hewitt changed H.'s diaper, Hewitt observed that the diaper was stained with blood and that H.'s vagina was lacerated. According to Stephanie, 'it looked like [H.'s] insides was falling out.' (R. 855). Hendricks drove Hewitt and H. to his grandfather's house where several relatives looked at H.'s injury and told Hewitt to take her daughter to the hospital emergency room. Hendricks drove Hewitt and H. to St. Francis hospital. Shortly thereafter, H. was transferred by ambulance to Riley Hospital where Dr. Phillip Merk examined H.'s vagina. Dr. Merk found a penetrating vaginal injury which had occurred within the past 12 to 24 hours. Specifically, Dr. Merk described the injury as follows:

The major injury that was noted, and the place the bleeding was coming from, was from a tear or laceration, which started inside the vagina, interrupted or tore the hymen, and then extended down toward the anus. It went down to the muscle that surrounds the anus, went down to the sphincter, but not, not through it. And this was three centimeters in length, which was, is probably, oh, a

little bit, inch and a quarter to an inch and a half in length.

(R. 1290–91). Dr. Merk further stated that the injury was caused by a penis or something similar to a penis, and that the type of force 'would be something like falling or jumping in the air, legs spread wide open, and landing on something like a broom handle.' (R. 1341–42). H.'s life threatening injury required surgical repair.

After Dr. Merk had examined H., Riley Hospital social worker Cynthia Scott told Hewitt and Hendricks that the doctors suspected that H. had been molested. Scott further told Hewitt and Hendricks that she would need to speak with each one of them. Thereafter, Hendricks left the hospital and did not return. The following week, Hendricks stayed with various friends and relatives. During that time, Indianapolis Police Department officers attempted to contact Hendricks; however, the officers were unable to find him. A warrant for Hendricks' arrest was issued on September 22, 1994. Hendricks turned himself in the following day.

Hendricks was charged with child molesting as a class A felony. Following a pre-trial hearing, the court found that H. was unavailable to testify because she could not understand an oath. Therefore, the trial court allowed three witnesses to testify at trial regarding hearsay statements which H. made to them and which implicated Hendricks in the molestation. Specifically, Hewitt testified that when she asked H. who had hurt her, H. responded that it was 'Daddy Michael.' (R. 957). Debra Hobson, H.'s paternal grandmother, testified that while she was at Riley Hospital changing H.'s diaper, H. started crying and told Hobson that she had a 'booboo.' (R. 1507). Hobson asked her where the 'booboo' was located, and H. lightly pat-

ted her vagina. Hobson asked H. how she got the 'booboo' and H. responded that 'Daddy Michael did the "booboo." ' (R. 1057). Lastly, H.'s maternal grandmother, Carla Greenier, testified that while her son and H. were playing in the children's playroom at Riley Hospital, H. said 'ooh.' Greenier asked H. what was wrong and who had hurt her. H. responded that it was 'daddy.' According to Greenier, she had never heard H. refer to anyone other than Hendricks as 'daddy.'

A jury convicted Hendricks of child molesting as a class A felony and the trial court sentenced him to 45 years." *Hendricks v. State*, 683 N.E.2d 650, slip op. at 2–4 (Ind.Ct.App. 1997).

Following his direct appeal, Hendricks filed a petition for post-conviction relief claiming that he was denied the effective assistance of appellate counsel, along with several other claims. His petition for post-conviction relief was denied on May 20, 2003.

▪ Post-conviction proceedings do not afford a petitioner with an opportunity for a "super-appeal." *Ben–Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind.2000), *cert. denied* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002). Post-conviction proceedings provide an opportunity to raise issues which were not known to the petitioner at the time of the original trial or were not available upon direct appeal. *Id.* The petitioner must establish his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). In appealing from the denial of post-conviction relief, the petitioner bears the burden to show that the evidence is without conflict and leads to a conclusion opposite that reached by the post-conviction court. *Hackett v. State*, 661 N.E.2d 1231, 1233 (Ind.Ct.App.1996), *trans denied.*

The standard of review for a claim of ineffective assistance of appellate counsel is essentially the same as for trial counsel in that the defendant must show appellate counsel was deficient in his performance and the deficiency resulted in prejudice. *Hooker v. State*, 799 N.E.2d 561, 570 (Ind. Ct.App.2003). To satisfy the first prong, the petitioner must show that counsel's performance was deficient in that representation fell below an objective standard of reasonableness, committing errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *McCary v. State*, 761 N.E.2d 389, 392 (Ind.2002), *reh'g denied*. To show prejudice, the petitioner must present a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.* However, because the two components are separate and independent inquiries, " '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.' " *Landis v. State*, 749 N.E.2d 1130, 1134 (Ind.2001) (quoting *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well. *Hooker*, 799 N.E.2d at 570. The waiver of issues and failure to present issues well form the bases of Hendricks' arguments.

▇▇▇ To show that counsel was ineffective for failing to raise an issue upon appeal, the defendant must overcome the strongest presumption of adequate assistance. *Id.* To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the record, and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id.* at 571. If that analysis demonstrates deficient performance by counsel, the court then examines whether the issues which appellate counsel failed to raise would have been more likely to result in reversal or an order for a new trial. *Id.*

▇▇▇ The first issue upon which Hendricks relies is the failure of his appellate counsel to challenge the trial court's decision to allow the testimony of three witnesses relaying statements made by H. which indicated that Hendricks had molested her and the admission of a taped interview with H. by a police officer. Hendricks asserts that the information was inadmissible hearsay and that its admission violated the Confrontation Clause of the federal Constitution.

Indiana Code § 35–37–4–6 (Burns Code Ed. Repl.1998) authorizes the admission of a statement or a videotape of a child of less than fourteen years of age in certain criminal actions, including those involving sex crimes. Subsection (c) provides that:
"A statement or videotape that:
(1) Is made by a person who at the time of trial is a protected person;
(2) Concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the person; and
(3) Is not otherwise admissible in evidence;
is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (d) are met."
The requirement of subsection (d), as applicable here, was met in that the trial court concluded that H. was incapable of understanding the nature and obligation of an oath. However, in order for the statement or videotape to be admissible, I.C.

§ 35–37–4–6(e) requires that the protected person be available for cross-examination at the hearing in which the trial court determined that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability or when the statement or videotape was made. Hendricks asserts that H. was not available for cross-examination because she basically refused to answer any questions of the prosecutor or of Hendricks' counsel.

We do not subscribe to Hendricks' view that H. was unavailable for cross-examination due to her failure to answer some of the questions posed to her about the incident. While it is true that the parties did not elicit information from her concerning the identity of the individual who molested her, this failure was based in large part upon the fact that questioning did not proceed down that route. Rather, Hendricks' trial counsel abandoned questioning H. because of the assumption that H. would be unresponsive to the questions. Nonetheless, the record reveals that H. was able to respond to some questions posed by counsel. Given that H. was two years old at the time of the questioning, it does not surprise this court that H. would not offer narrative responses to questions posed to her. Thus, we cannot conclude that H. was unavailable for cross-examination as contemplated by I.C. § 35–37–4–6(e).

Be that as it may, we cannot but be concerned about the effectiveness of any cross-examination of H., or of any small child, and whether such cross-examination is truly meaningful. When a child's answers waver or the child is non-committal in her responses, is the cross-examination truly meaningful or is it merely a formalistic compliance with a requirement that there be an opportunity for cross-examination? *See Williams v. State,* 698 N.E.2d 848 (Ind.Ct.App.1998) (Sullivan, J., dissenting) (stating that the fact that the child testified at a first trial and was subject to cross-examination did not satisfy the opportunity for meaningful cross-examination because at that time the child alternated between denying making any statements incriminating his father and not recalling making such statements), *trans. denied.* Nonetheless, given the posture of the case before us, this concern does not warrant reversal.

■ We are also not convinced that the trial court's finding that the time, content, and circumstances of the statements and videotape provided significant indications of reliability was incorrect such that we may conclude that it presented a significant and obvious issue which was stronger than the other issues presented upon appeal.[1] Clearly, there are concerns presented because these statements were made by a two-year-old child who did not cooperate during questioning by police or at the time of the hearing to determine whether the statements and videotape would be admissible. Nevertheless, the evidence did reveal that the statements and videotape were made in such a manner that they appeared to be reliable indicators of Hendricks' guilt. There was no evidence of coaching or that any witness who testified about one of the statements or the videotape coaxed or led H. into naming Hendricks as her assailant. Based upon these considerations required by I.C. § 35–37–4–

---

1. The first issue presented upon appeal was that the trial court erred in denying a motion for a mistrial which Hendricks claims should have been granted because of an answer given by a witness to a question. The second issue is that the trial court erred in instructing the jury in regard to flight. This court found that a mistrial was not warranted but that the flight instruction was improper. *Hendricks,* at 7–8. Nonetheless, we also held that Hendricks was not prejudiced by the flight instruction. *Id.*

6, we cannot conclude that appellate counsel was ineffective for not challenging the ruling that the evidence was admissible under this statutory exception to the hearsay rule. *See Arndt v. State,* 642 N.E.2d 224, 227 (Ind.1994) (stating that, in essence, I.C. § 35–37–4–6 recognizes an exception to the hearsay rule).

We now turn to Hendricks' claim that the statement violated the Confrontation Clause of the federal Constitution.[2] In *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court reviewed whether the out-of-court statements of a child were admissible as evidence under a residual hearsay exception found in State law. The Court noted the time-honored principle that the Confrontation Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the clause. *Id.* at 813, 110 S.Ct. 3139. Rather, the Confrontation Clause bars the admission of some evidence which would otherwise be admissible under an exception to the hearsay rule. *Id.* at 814, 110 S.Ct. 3139. The Court then discussed the approach, as set forth in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), to be used when determining whether incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause. The Supreme Court's decision stated:

> "We noted that the Confrontation Clause 'operates in two separate ways to restrict the range of admissible hearsay.'

'First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.' Second, once a witness is shown to be unavailable, 'his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.'" *Wright,* 497 U.S. at 814–15, 110 S.Ct. 3139 (quoting *Roberts,* 448 U.S. at 65–66, 100 S.Ct. 2531) (citations omitted).

Hendricks has asserted that admission of hearsay from a child victim is not based upon a firmly rooted hearsay exception. Thus, he opines that the only way the statement could have been admitted is if it were supported by a showing of particularized guarantees of trustworthiness. He concludes that this showing was not made.

We must conclude that this showing was made in that I.C. § 35–37–4–6 requires the finding that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability. There is little fundamental difference in saying that a statement has particularized guarantees of trustworthiness and that the statement bears sufficient indications of reliability. As concluded above in discussing whether the trial court fulfilled the

---

**2.** Hendricks also noted in his brief that Article 1, Section 13 of the Indiana Constitution provides for the defendant's right to confront and cross-examine witnesses. Citing to *Pierce v. State,* 677 N.E.2d 39 (Ind.1997), he asserts that this protection is greater than that afforded by the federal Constitution, but he does not develop an argument in asserting that the admission of the statements and videotape resulted in a violation to this right. Rather, he only makes the assertion. Thus, we need not address the assertion. *See* Ind. Appellate Rule 46(A)(8).

requirements of I.C. § 35–37–4–6, any error in the trial court's finding that the statements and videotape bore sufficient indications of reliability so as to be admissible was not so significant and obvious so as to render the issue clearly stronger than the other issues brought upon appeal. Consequently, Hendricks' appellate counsel was not ineffective for failing to challenge the admission of the hearsay statements and videotape upon appeal.

It should be noted that the approach espoused in *Roberts* has been found to be violative of the requirements of the Confrontation Clause. *See Crawford v. Washington,* —— U.S. ——, ——, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177, —— (2004). In *Crawford,* the majority concluded that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 1374. In other words, when the State is offering testimonial evidence [3] against a defendant, the defendant must have had the prior opportunity to cross-examine the declarant in order for the evidence to be admitted. *Id.* However, when the evidence at issue is nontestimonial hearsay, the States have flexibility in developing hearsay law and that approach may exempt such statements from Confrontation Clause scrutiny altogether.[4] *Id.* However, because we are faced with the question of whether counsel was ineffective in 1994, the holding in *Crawford* does not bear upon our decision.

Hendricks also claims that his appellate counsel was ineffective for failing to challenge the trial court's decision to instruct the jury that a conviction may rest upon the uncorroborated testimony of the victim. In so doing, he asserts two grounds of error. The first is that it has since been held that it is error to give the instruction and the reasons it is an erroneous instruction existed at the time of trial. The second is that H. did not testify at the trial and it was erroneous to inform the jury that the statements attributed to her could be considered "testimony."

We acknowledge that our Supreme Court has recently held that this instruction is improper and should not be given. *See Ludy v. State,* 784 N.E.2d 459 (Ind. 2003). However, the instruction of which Hendricks complains had received considerable approval from both this court and our Supreme Court. *See id.* at 462 n. 2. Given that the instruction was widely accepted, we hardly consider the use of it to be a significant and obvious error which was clearly stronger than the other issues presented upon appeal.

The claim of error resulting from the assertion that H. did not testify is not so easily dismissed. There can be no dispute that H. did not testify under oath at the trial. "Testimony" is defined as "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition." Black's Law Dictionary 1485 (7th ed.1999). Thus, in the strictest sense of the word, the hearsay statements would not be considered testimony because H. did not make them under oath at trial or in an affidavit or deposition. However,

---

**3.** While the Court did not comprehensively define what constitutes testimonial evidence, it held that at a minimum it applied to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. *Id.*

**4.** Were this approach announced in *Crawford* to apply in this case, the admission of the videotaped statement made during questioning by a police officer would be subject to the requirement of cross-examination according to the mandates of the Confrontation Clause. Whether the remaining statements were admissible would be subject to State law requirements.

in *Crawford*, the United States Supreme Court broadened this definition to include more than just statements which are sworn. Specifically applicable here is the mandate that statements taken by police officers in the course of interrogations are testimonial and that the absence of an oath is not dispositive of the issue. *Crawford*, — U.S. at ——, 124 S.Ct. at 1364. But once again, given that the claim before us is based upon an ineffective assistance of counsel claim which has its roots in actions which took place ten years before *Crawford*, our review is not controlled by the holding in *Crawford*.

Whether the statements made by H. should be considered testimony is not an issue which was so significant and obvious that appellate counsel could be held ineffective for failing to raise it upon appeal. The intent of the instruction was to inform the jury that the description of the crime and the identification of the perpetrator by the victim was sufficient evidence to result in a conviction. As stated above, the use of the instruction to convey this message was supported by the appellate courts of this State. It is arguable that the spirit of the instruction was fulfilled in that competent evidence which originated with the statements of H. was presented to the jury through the testimony of the witnesses. Given the arguments which could have been developed in this regard to support the giving of the instruction, we cannot say that counsel was ineffective for failing to challenge the instruction.

Hendricks also asserts that his appellate counsel was ineffective for failing to challenge the trial court's decision to replay the videotaped interview of H. for the jury upon its request. According to Hendricks, the requirement that there be a disagreement among the jurors about the evidence, as established by Indiana Code § 34–1–21–6 (Burns Code Ed. Repl.1986),[5] was not

met because the jury foreperson stated that the need to see the videotape a second time arose "[n]ot so much [from] disagreement as a couple of jurors couldn't hear clearly what [H.] said." Record at 2137–38. According to the holding of our Supreme Court in *Bouye v. State*, 699 N.E.2d 620 (Ind.1998), Hendricks' interpretation of the facts as applied to the law would seem to be correct. Nevertheless, this view of the law was not established by our Supreme Court until 1998. Prior to that time, there was a split among the panels of this court as to when I.C. § 34–1–21–6 was triggered. One line of cases held that the statute did not authorize the jury to rehear the evidence unless the jurors explicitly manifested a disagreement about the evidence. *See Bouye*, 699 N.E.2d at 627. A second line held that whenever a jury requested that it be given the opportunity to rehear evidence, the jury was inherently expressing disagreement or confusion about the evidence, thus triggering the statute. *Id.* Given the split in precedent in this court at the time of the trial and appeal, the issue was not so significant and obvious that appellate counsel will be considered to have been ineffective for failing to bring the issue upon appeal.

Turning to the assertion that appellate counsel was ineffective for failing to present issues well, Hendricks claims that his counsel was ineffective for failing to present a complete record upon appeal. Specifically, he asserts error in his counsel's failure to have the opening and closing arguments of the trial transcribed. Hendricks opines that had they been transcribed, this court would have concluded that he was prejudiced by the erroneous flight instruction and would have reversed the conviction.

Claims of ineffective assistance for inadequate presentation of issues that were not deemed waived in the direct appeal are the

---

**5.** This is now codified at Indiana Code § 34–36–1–6 (Burns Code Ed. Repl.1998).

most difficult for defendants to advance and are almost always unsuccessful. *Harrison v. State*, 707 N.E.2d 767, 787 (Ind. 1999), *cert. denied* 529 U.S. 1088, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000). We are not persuaded that this is one of those rare cases in which such a claim is successful. Upon appeal, this court concluded that even though the flight instruction was erroneous, there was no prejudice to Hendricks' substantial rights. This was due to the various other instructions given which required the jury to find that the State had proven each element of the crime and that Hendricks was presumed innocent until proven guilty. *Hendricks,* at 8. Furthermore, this court concluded that each element of the crime of child molesting was supported by the evidence. *Id.* at 9. While the remarks made by the Prosecutor during opening and closing argument may have enhanced the possibility that Hendricks was prejudiced by the instruction, those remarks do not establish the prejudice necessary to reverse his conviction in light of the evidence which supported the elements of the crime, including the fact that Hendricks was alone with H. during a period of time in which she was injured and because H. herself identified Hendricks as the perpetrator. *See Dill v. State,* 741 N.E.2d 1230, 1233 (Ind.2001) (holding that error in jury instruction is harmless where a conviction is clearly sustained by the evidence and will result in reversal when the reviewing court cannot say with confidence that a reasonable jury would have rendered a guilty verdict had the instruction not been given).

The denial of post-conviction relief is affirmed.

ROBB, J., and ROBERTSON, Sr.J., concur.