Willard PURVIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0407–CR–566.

Court of Appeals of Indiana.

June 7, 2005.

Transfer Denied Aug. 11, 2005.

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, J.

### Case Summary

Willard Purvis was convicted of child molesting based in part on statements of his victim, ten-year-old M.B. M.B. made these statements to his mother and her boyfriend immediately after the offense, and he made statements to a police officer within two hours of the offense. On appeal, Purvis argues that M.B.'s evidence was admitted in violation of his confrontation rights. We hold that the statements to the mother and her boyfriend were not testimonial and did not implicate the Confrontation Clause. Further, these statements were properly admitted under state evidence principles governing excited utterances and out-of-court statements by young children. Statements to the officer were not properly admitted, but the error is harmless. Purvis also argues that a letter he wrote to the court and evidence that he previously used the same alias

should not have been admitted, and he argues that his fifty-year sentence was inappropriate. Finding no prejudicial error on any of his claims, we affirm the conviction and sentence.

### Facts and Procedural History

In 2003, M.B. lived on Albany Street on the South Side of Indianapolis with his mother, Shawn Bowling; his sister, C.B.; and Shawn's boyfriend, Oscar Gray. Although M.B. is chronologically age ten, he functions at approximately age five or six. He suffers from Agenesis Corpus Callosum, a disorder in which a nerve connecting the hemispheres of his brain is congenitally absent. Because of this disorder, he takes several medications and participates in special education classes. He has seizures. He also has been diagnosed with attention deficit-hyperactivity disorder.

The family first encountered Purvis on October 11, 2003, when he was walking a dog in the neighborhood. The dog attracted the children's attention, and Purvis had a long conversation with Shawn. He introduced himself as Kyle Gross, said he was fifteen years old (he was actually twenty-five), and provided other false information. He said he was part of a Big Brothers program through his school and offered to provide Shawn with information on the program so that he could become a Big Brother to M.B.

Purvis returned to the Bowling home each day for the next five days, generally around the time the children would get off the school bus, sometimes bringing candy or treats. At first, Shawn did not leave Purvis alone with her children. On the fourth day Purvis visited, Shawn allowed Purvis to play with M.B. in M.B.'s bedroom, but she remained in the room with them.

The fifth day Purvis visited was October 16, 2003. On this day, Shawn permitted Purvis to play with M.B. in M.B.'s room without her presence. She insisted, however, that the bedroom door be left open. She testified at trial that the door was briefly closed, although M.B. stated that Shawn fell asleep during the time Purvis was in his bedroom.

Because it was "too quiet" in the bedroom, Tr. p. 134, Shawn looked in on Purvis and M.B. M.B. immediately told her, "Mom, we're not doing nothing." *Id.* at 136. Shawn observed that Purvis's and M.B.'s shirts were no longer tucked into their pants and that their faces were flushed. She noticed that M.B.'s belt had been removed. She also saw that Purvis's trousers were unzipped, that he was wearing white underwear, and that she could see the tip of his penis through the unzipped fly of his trousers.

Shawn made up a story to get Purvis out of the house. She roused Gray, who had been asleep, and took C.B. to a neighbor's house. When Gray asked M.B. "what happened?" M.B. initially resisted telling him. Then M.B. told Gray that Kyle (a name by which he knew Purvis) put his "private" into M.B.'s mouth and made M.B. "suck on it." *Id.* at 234–35. M.B. indicated to Gray that "private" meant penis. M.B. told Gray that Purvis's penis "was nasty looking, nasty tasting." *Id.* at 235.

When Shawn returned home, M.B. asked her, "Did [C.B.] tell you about our secret?" When Shawn implied that C.B. had told her what happened (which she had not), M.B. told her:

> that Kyle had took his penis out. Exact words that [M.B.] used. And that he was playing with his self. And then he asked [M.B.] to . . . . suck on it. And [M.B.] said it tasted nasty. And that Kyle had a round thing that glowed in the dark and wanted to go into the

closet.[1] And that Kyle had him to take his belt off and take his [penis] out while Kyle did the same to him.

*Id.* at 149. M.B. told Shawn that Purvis's penis was "hard as a brick" and "had a lot of black hair." *Id.* at 150.

Shawn thereupon telephoned police. Officer Jeffrey Cuthbertson spoke to M.B. less than two hours after M.B. had first recounted the molestation to Gray. M.B. told Officer Cuthbertson the following, referring to Purvis as "Michael," another alias he had used with M.B.:

[M.B.] said then he, Michael sucked [M.B.'s] penis. After that, he, Michael asked him to suck his. And he said that it smelled bad, tasted bad, and he didn't want to do it. And that after a while, which he said it seemed like a long time, something hot and sticky came out, and that was nasty, so he spat on his room floor where it occurred at.

*Id.* at 223.

Shawn took M.B. to a hospital, but before leaving for the hospital, M.B. ate a sandwich and drank milk. On the way to the hospital, M.B. vomited. Medical tests found no semen or other physical evidence in M.B.'s mouth, but M.B.'s eating, drinking, and vomiting would have reduced the chance of finding such evidence if it had previously been present.

Police did not arrest Purvis on October 16, the day he molested M.B. On the following day, however, Purvis returned to the Bowling residence to retrieve headphones he had left there the day before. The police were called, and they arrested Purvis. When he was arrested, he identified himself as Kyle Gross and said he was fifteen years old. Because he identified himself as a juvenile, an officer transported him to the location he had provided as his mother's home. In route, Purvis told the officer his real name and age.

Purvis was charged with two counts of Class A felony child molesting.[2] Before trial, the trial court held a hearing on whether M.B. could testify. M.B. was cross-examined by Purvis's counsel at that hearing. The trial judge determined that M.B. was not competent to testify because he was unable to appreciate the nature and obligation of an oath. The trial court also found that he did not respond to questioning in an age-appropriate manner. Applying the Protected Persons Statute, Indiana Code § 35–47–4–6, and the rules of evidence, the court ruled that although M.B. could not testify, his statements to Gray, to Shawn, and to Officer Cuthbertson were sufficiently reliable to be admitted at trial.

At trial, Gray, Shawn, and Officer Cuthbertson testified about the statements M.B. made to them. The trial court also admitted as evidence, over Purvis's objection, a letter Purvis wrote to the court. Additionally, the trial court admitted evidence, under Evidence Rule 404(b), that Purvis had used the name "Michael" as an alias in previous instances when he was involved with the police.

After trial to the bench, the trial court found Purvis guilty of the count of child molestation in which Purvis was charged with placing his penis in M.B.'s mouth. It acquitted Purvis of the other count, which alleged that Purvis placed M.B.'s penis in his mouth. The trial court found that Purvis had violated his probation for two other convictions and required Purvis to

---

1. Several weeks after Purvis was arrested, M.B. was with his mother when they saw a condom on the ground. At that time, M.B. identified the condom as the "round thing" Purvis had in his bedroom.

2. Ind.Code § 35–42–4–3.

serve additional executed time on each of those convictions. It sentenced Purvis to fifty years of executed imprisonment on the Class A felony child molestation, consecutive to the previous sentences on which the court revoked probation. This appeal ensued.

### Discussion and Decision

Purvis alleges five errors. He argues that (1) the trial court should not have admitted M.B.'s out-of-court statements as evidence; (2) the trial court should not have admitted the letter he wrote to the court; (3) the trial court should not have admitted evidence that he previously used the alias "Michael"; (4) evidence to support his conviction is insufficient; and (5) his sentence is inappropriate. We analyze each issue in turn.

### I. Out–of–Court Statements

Purvis argues that the trial court should not have admitted M.B.'s statements to Gray, Shawn, and Officer Cuthbertson. We generally review questions regarding a trial court's admission of evidence to determine whether a trial court abused its discretion. *Allen v. State*, 813 N.E.2d 349, 360 (Ind.Ct.App.2004), *trans. denied.* Where the alleged error also involves claims of legal error, we judge questions of law *de novo. Hill v. Ebbets Partners Ltd.*, 812 N.E.2d 1060, 1063, *aff'd on reh'g*, 816 N.E.2d 965 (Ind.Ct.App.2004), *trans. denied.*

The trial court admitted M.B.'s statement to Gray and one statement to Shawn as excited utterances. It admitted the other statements under the protected persons statute, Indiana Code § 35–37–4–6. Purvis argues that (1) all the statements were testimonial and therefore barred by *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), because they were not subject to cross-examination; (2) the statements to Gray and Shawn were not excited utterances; and

(3) M.B. was not available for meaningful cross-examination under the protected persons statute or *Crawford*, so his statements were admitted erroneously under that statute.

At the outset, it is important to clarify the relationship between *Crawford* and evidentiary principles established by rule and statute. Before *Crawford*, it was the law that hearsay evidence of an unavailable witness could be introduced if it bore adequate indicia of reliability either because it fell within a firmly rooted hearsay exception or otherwise was reliable. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In the wake of *Roberts*, many states, including Indiana, enacted statutes that set forth criteria to establish reliability as a matter of state law. *See, e.g.*, I.C. § 35–37–4–6. *Crawford* overruled *Roberts* by requiring that *testimonial* out-of-court statements may be admitted as evidence in a criminal trial only if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 68–69, 124 S.Ct. 1354. Later in this opinion, we will explore the test for determining whether an out-of-court statement is testimonial.

As to non-testimonial out-of-court statements, however, *Crawford* does not govern admissibility. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Id.* at 69, 124 S.Ct. 1354. Thus, when the hearsay statements at issue are not testimonial, ordinary state law evidence laws and rules determine their admissibility.

## A. Testimonial Nature of M.B.'s Statements

*Crawford* held that out-of-court *testimonial* statements of unavailable witnesses may not be admitted at a criminal trial unless the adverse party has had an opportunity to cross-examine the unavailable witness. *Id.* at 68–69, 124 S.Ct. 1354. The first question in our analysis therefore must be whether the out-of-court statements at issue in this case are testimonial. While the Supreme Court did not develop a full definition of "testimonial" in *Crawford*, it provided guidance. For instance, the court indicated that "at a minimum . . . prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations" are testimonial. *Id.* at 68, 124 S.Ct. 1354. The court also indicated that one guidepost for determining whether hearsay is testimonial is whether an objective witness would reasonably believe that the statement would be available for use at a later trial. *Id.* at 52, 124 S.Ct. 1354.

■ Using these guidelines, we determine that M.B.'s statements to Gray and Shawn are not testimonial. His statements to both of these individuals—his mother and the man he treated as his father—were elicited to find out what had occurred and whether M.B. had been harmed. The rationale of the rule in *Crawford* is to exclude from evidence statements that have not been cross-examined that were gathered for the purpose of use at a later trial. M.B.'s statements to Gray and Shawn were not elicited for the purpose of preparing to prosecute anyone but rather to gain information about what happened, find out if M.B. was harmed, and remedy any harm that had befallen

him. In a similar case, the Illinois Court of Appeals permitted statements to family members to be admitted as evidence. *In re Rolandis G.*, 352 Ill.App.3d 776, 288 Ill.Dec. 58, 817 N.E.2d 183, 188 (2004), *appeal pending.*

■ Purvis argues that M.B.'s statements to Gray and Shawn should be classified as testimonial because the two adults suspected some illegal or nefarious activity and were, in effect, "investigating" and turning up evidence eventually provided to police. This argument sweeps too broadly. Parents of young children constantly question them about their activities, often to ensure that the children are behaving safely. When parents find illegal activity or victimization, they naturally contact appropriate authorities. The fact that parents turn over information about crimes to law enforcement authorities does not transform their interactions with their children into police investigations. When they questioned M.B., Gray and Shawn were motivated primarily to find out what happened so that they could protect M.B.'s safety. This activity is sufficiently attenuated from law enforcement conduct to be non-testimonial under *Crawford.*

■ M.B.'s statements to Officer Cuthbertson are not so easily classified as non-testimonial. *Crawford* classified hearsay arising from "police interrogations" as testimonial but did not define "interrogations." 541 U.S. at 52, 124 S.Ct. 1354. On one end of the spectrum, "interrogation" could be read to mean only custodial questioning of an individual suspected of a crime; on the other end, it could mean any conversation between a law enforcement officer and another individual.[3] The court

---

3. The definitions in *Webster's Third New International Dictionary* 1182 (unabridged ed.1993) reflect this range of meanings. "Interrogate" is defined first as "to question typi- cally with formality, command, and thoroughness for full information and circumstantial detail" and second as "to ask questions about."

stated that "[w]e use the term 'interrogation' in its colloquial, rather than any technical legal, sense." *Id.* at 53 n. 4, 124 S.Ct. 1354.

"Most of the post-Crawford cases reviewing this issue have held that initial police-victim interaction at the scene of an incident is not an interrogation and that admission of testimony about that interaction does not offend the Confrontation Clause." *Key v. State,* —— S.W.3d ——, ——, No. 12–04–00030–CR, 2005 WL 467167, at *3 (Tex.Ct.App. Feb. 28, 2005) (collecting cases) (classifying as non-testimonial statement by victim to officer who rescued her from abusive situation), *pet. for review pending.* This Court has held that initial questioning by police at the scene of an incident is unlikely to elicit testimonial hearsay, especially when the hearsay qualifies as an excited utterance. *Rogers v. State,* 814 N.E.2d 695, 701 (Ind. Ct.App.2004) (relying on *Hammon v. State,* 809 N.E.2d 945, 953 (Ind.Ct.App. 2004), *trans. granted ).*

In contrast to these holdings regarding *initial* police contact, other jurisdictions have determined that interviews of child abuse victims by police or those working with police produce testimonial hearsay because the interviews—even if not "interrogations" in any colloquial sense—are calculated to produce evidence admissible at a later trial. *State v. Grace,* No. 25970, 2005 WL 639426 (Haw.Ct.App. Mar. 21, 2005), *pet. for state cert. denied; In re T.T.,* 351 Ill.App.3d 976, 287 Ill.Dec. 145, 815 N.E.2d 789 (2004), *appeal pending; State v. Snowden,* 385 Md. 64, 867 A.2d 314 (Md.2005); *State v. Mack,* 337 Or. 586, 101 P.3d 349 (2004). In excluding a child victim's statements to a sexual abuse investigator, the Maryland Court of Appeals wrote that "the uniting theme underlying the *Crawford* holding is that when a statement is made in the course of a criminal investiga-

tion initiated by the government, the Confrontation Clause forbids its introduction unless the defendant has had an opportunity to cross-examine the declarant." *Snowden,* 867 A.2d at 324.

M.B.'s statements to Officer Cuthbertson were neither excited utterances nor an "interrogation" in the formal sense. But to be sure, at the time of Officer Cuthbertson's questioning of M.B., Cuthbertson knew M.B.'s allegations against Purvis and knew that he was investigating a child molestation. There can be no question that the information M.B. provided to Officer Cuthbertson could be used in any potential prosecution, and a primary purpose of the questioning was to obtain information that could be used in a prosecution. As a Hawaiian court put it, "[t]he pertinent question is whether an objective observer would reasonably expect the statement to be available for use in a prosecution." *Grace,* 107 Hawai'i 133, 111 P.3d 28, 38 (internal quotation and emphasis omitted). Under these circumstances, we conclude that M.B.'s statement to Officer Cuthbertson is testimonial and therefore covered by *Crawford's* prohibition against use of testimonial hearsay not subject to cross-examination.

We do not hold that every statement by a crime victim to a police officer is testimonial. We hold only that M.B.'s statements to Officer Cuthbertson were testimonial under the specific circumstances of this case, where Shawn had briefed the officer on the facts before he questioned M.B. and where he repeated his questioning to M.B. multiple times for the purpose of obtaining evidence to be used to prosecute Purvis.

**B. Admissibility of M.B.'s Statements to Officer Cuthbertson**

 Having determined that M.B.'s statements to Officer Cuthbertson were testimonial in nature, we must determine whether Purvis was afforded an opportuni-

ty to cross-examine M.B. as required by *Crawford.* Purvis was allowed to cross-examine M.B. at the trial court's hearing conducted to determine M.B.'s competence to testify and to fulfill the requirements of the Protected Persons Statute, Indiana Code § 35–47–4–6(f) (allowing protected person's out-of-court statement to be admitted only if, *inter alia,* protected person "was available for cross-examination"). As we discuss further in Part I.D. of this opinion, this hearing satisfied the requirements of the Protected Persons Statute. But, M.B.'s testimony at the hearing did not constitute cross-examination for *Crawford* purposes, because the trial court determined that M.B. was unable to understand the nature and obligation of an oath. Since M.B. was incompetent to testify, Purvis's cross-examination of M.B. at the hearing did not satisfy the requirements of *Crawford* because Purvis lacked an opportunity for "full, adequate, and effective cross-examination." *See, e.g., Parker v. State,* 773 N.E.2d 867, 868 (Ind.Ct.App. 2002) (discussing limitations on cross-examination), *trans. denied.* We cannot set forth a precise test for determining what constitutes "full, adequate, and effective cross-examination," but we conclude that, at least in the circumstances of this case, a witness unable to appreciate the obligation to testify truthfully cannot be effectively cross-examined for *Crawford* purposes. We will address below whether admission of Officer Cuthbertson's evidence requires reversal.

### C. Excited Utterances of M.B. to Gray and Shawn

■ The trial court admitted M.B.'s statements to Gray and one of his statements to Shawn as excited utterances under Indiana Evidence Rule 803(2). As we discussed above, these statements were non-testimonial in nature and therefore subject only to our state's hearsay law.

We next consider the propriety of the trial court admitting these statements as excited utterances. Evidence Rule 803(2) excludes from the definition of hearsay "[a] statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition."

> Under this test, the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. Further, the statement must be trustworthy under the facts of the particular case, and the trial court should focus on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event.

*Rogers v. State,* 814 N.E.2d 695, 699 (Ind. Ct.App.2004) (citation omitted). We examine each statement separately.

M.B.'s statement to Gray was made almost immediately after Purvis left the Bowling home, just after Shawn called the police but before officers arrived. M.B. had tears in his eyes as he began to talk with Gray. He was at first unwilling to talk with Gray about the incident. There is no evidence of any opportunity for M.B. to have been coached before speaking to Gray. M.B. was plainly upset from the stress of his unpleasant experience with Purvis and the trauma of being discovered by his mother. The trial court's careful and detailed findings also indicate that M.B.'s statements to Gray met all the criteria to be classified as excited utterances. Appellant's App. p. 143; Tr. p. 386 ("It was within a very close time period to the event, [M.B.] was crying, that's why [Gray] asked him what happened."). We affirm the trial court's decision to admit M.B.'s statements to Gray as evidence at trial.

■ The trial court also admitted the spontaneous statement M.B. made to Shawn when she entered his bedroom. At that time, M.B. said, "Mom, we're not doing nothing," and Shawn concluded from that remark and M.B.'s demeanor that some kind of improper activity had occurred. Tr. p. 135–36. The trial court ruled that "this statement by M.B. was an excited utterance, and further that it is not being offered for the truth of the statement." Appellant's App. p. 145. We agree that the statement is not being offered for its truth, but rather to show M.B.'s state of mind. The statement therefore is not hearsay. Evid. R. 801(c). There was no error in admitting the statement.

### D. M.B.'s Statements to Shawn Admitted under the Protected Persons Statute

■ The trial court admitted M.B.'s other statements to Shawn, which were quite similar to M.B.'s statements to Gray narrating the molestation, under the Protected Persons Statute, I.C. § 35–37–4–6. Appellant's App. p. 145. As we determined above, the statements at issue by M.B. to Shawn were not testimonial and Indiana's evidence law therefore governs their admissibility, not the Confrontation Clause principles elaborated in *Crawford*. When out-of-court statements are not tes-timonial, their admissibility is governed by state-law evidence principles because Confrontation Clause values are implicated to a lesser extent. *Crawford*, 541 U.S. at 69, 124 S.Ct. 1354.

■ The Protected Persons Statute governs testimony by, among others, children under age fourteen who are victims of sex crimes. I.C. § 35–37–4–6(b)(2), (c).[4] The statute states that:

[a] statement ... that ... concerns an act that is a material element of an offense listed in subsection (a) or (b) [including child molesting] that was allegedly committed against the [protected] person and is not otherwise admissible in evidence is admissible in evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met.

*Id.* at (d) (punctuation and paragraphing omitted). To be admissible under Subsection (e), a court must find after a hearing attended by the protected person "that the time, content, and circumstances of the statement ... provide sufficient indications of reliability" *and* the protected person must either testify at trial or be unavailable to testify for any of several reasons including "that the protected person is incapable of understanding the nature and obligation of an oath." *Id.* at

4. The statute defines "protected persons" as follows:

(1) a child who is less than fourteen (14) years of age;

(2) a mentally disabled individual who has a disability attributable to an impairment of general intellectual functioning or adaptive behavior that:
(A) is manifested before the individual is eighteen (18) years of age;
(B) is likely to continue indefinitely;
(C) constitutes a substantial impairment of the individual's ability to function normally in society; and

(D) reflects the individual's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services that are of lifelong or extended duration and are individually planned and coordinated; or

(3) an individual who is:
(A) at least eighteen (18) years of age; and
(B) incapable by reason of mental illness, mental retardation, dementia, or other physical or mental incapacity of:
(i) managing or directing the management of the individual's property; or
(ii) providing or directing the provision of self-care.

(e)(1), (e)(2)(B)(iii). Furthermore, if the protected person is unavailable to testify at trial, the statement may be admitted only if the protected person was available for cross-examination at the hearing required by Subsection (e) or when the statement was made. *Id.* at (f).

In this case, the trial court held the hearing required by Subsection (e) and determined that M.B. was unavailable as a witness because he could not understand the nature and obligation of an oath. The trial court also determined that the requisite indicia of reliability attached to M.B.'s statements to Shawn.[5] Appellant's App. p. 145. The court found that there was no opportunity for the statements to be coached, that M.B. had no motivation to lie, that Shawn was uniquely equipped by her experience to know whether M.B. was telling the truth, that M.B.'s statements were mostly spontaneous and expressed in age-appropriate language, and that the statements were corroborated by other evidence. *Id.*

Purvis does not dispute the trial court's findings regarding reliability, but rather he argues that M.B.'s statements to Shawn are inadmissible under the Protected Persons Statute because he had no real or meaningful opportunity to cross-examine M.B., as required by Subsection (f) of the statute. As Purvis puts it, "[w]hen such a child as M.B. is found to be incompetent, cross-examination is futile." Appellant's Br. p. 14.

Under applicable precedent, Purvis's opportunity to cross-examine M.B. at the protected persons hearing satisfied the statutory cross-examination requirement. Our supreme court has found that the statutory requirement is satisfied when a child, judged incompetent to testify, is available to be cross-examined at a hearing under the protected persons statute, even if the child's testimony at the hearing is not coherent. *Pierce v. State,* 677 N.E.2d 39, 46 (Ind.1997). Moreover, the statute is plainly written to require cross-examination in situations where the witness to be cross-examined is incompetent to testify at trial. *Compare* I.C. § 35-37-4-6(e)(2)(B)(iii) (stating "the protected person is incapable of understanding the nature and obligation of an oath") *with* I.C. § 35-37-4-6(f) (stating "the protected person [must be] available for cross-examination").

This Court also has held that the opportunity to cross-examine the unavailable witness at the protected persons hearing is sufficient to satisfy the statutory requirement. *Hendricks v. State,* 809 N.E.2d 865, 869 (Ind.Ct.App.2004) (applying post-conviction standard of review), *reh'g denied, trans. denied; Rickey v. State,* 661 N.E.2d 18, 22 (Ind.Ct.App.1996) (child victim incompetent to testify), *trans. denied; Casselman v. State,* 582 N.E.2d 432 (Ind.Ct. App.1991). In one of these cases, *Rickey,* the defendant's argument was similar to Purvis's, and we determined that Rickey had his opportunity to cross-examine the child witness despite the child witness's failure to respond to questions in an audible manner. 661 N.E.2d at 22.

■ We note that the role of cross-examination under the Protected Persons Statute is different than the purpose served by the cross-examination required by *Crawford.* Both admission under *Crawford* and the Protected Person Statute satisfy the dictates of the federal and state confrontation clauses. But the teachings of *Crawford* demand a higher

---

**5.** The trial court also determined that Officer Cuthbertson's statements met the requirements of reliability under the Protected Persons Statute, but his testimony should not have been admitted because of Confrontation Clause concerns, as discussed above.

standard of cross-examination for out-of-court testimonial statements than non-testimonial statements because testimonial statements implicate to a greater extent confrontation concerns. *Crawford*, 541 U.S. at 69, 124 S.Ct. 1354. Under the Protected Persons Statute—where the only requirement for admissibility is that the statements be deemed reliable—an opportunity for cross-examination is just one of several indicia of reliability on which the trial court may base its determination. The fact that a witness may not be competent to testify, or may give incomplete or fantastic answers, is just one factor to be considered in the overall determination of reliability.

■■■ The point of cross-examination under the Protected Persons Statute is to provide additional information to allow the trial court to determine whether the out-of-court statements are reliable. In this case, M.B.'s responses to questions on cross-examination often partook of fantasy or incoherence. *See, e.g.*, Tr. p. 10–27. The trial court described his testimony as sometimes "incoherent, distorted, and nonsensical," sometimes lucid and sometimes not. Appellant's App. p. 140. M.B.'s responses at the hearing are in contrast with the more direct and clear statements that Gray, Shawn, and Officer Cuthbertson testified that M.B. made to them. The trial court took M.B.'s responses on cross-examination into account in determining that certain statements he made to Shawn were sufficiently reliable to be admitted as evidence. As the trial court stated:

> [W]hile M.B. is incompetent to testify because he is unable to understand the nature and obligations of an oath, he is nevertheless capable of telling the truth. He did so at times during the child hearsay hearing, while at other times he lapsed into nonsensical rambling. The point is, however, that the child gives

fairly clear signals when he is not being truthful. He is extravagantly untruthful when he is being untruthful, and according to his mother, exhibits clear signs indicating that he is disconnected from reality, some of which the Court observed while M.B. testified at [the hearsay hearing]. Two of the three out of court statements the Court is admitting were made to the people closest to him, and thereby best able to evaluate and understand M.B.'s mental state.

*Id.* at 146. The trial court therefore took into account information from M.B.'s cross-examination in determining the reliability of his statements.

■ At bottom, Purvis's argument is that nothing M.B. said should be admitted as evidence because he is developmentally disabled. "M.B.'s disability renders his narration of events preposterous and absurd." Appellant's Br. p. 17. He argues that M.B.'s disability—which, as the trial court pointed out, is perhaps exactly what made Purvis target M.B. as a victim, Appellant's App. p. 412—disqualifies all of M.B.'s in-court or out-of-court statements. While the inability to cross-examine M.B. in the usual manner may cause unease, *see Hendricks*, 809 N.E.2d at 869, the General Assembly has enacted the Protected Persons Statute to direct the courts how to proceed in these cases, and we will follow that statute so long as it violates no constitutional principle.

■ Because M.B.'s statements to Shawn were not testimonial, Purvis has no constitutional right to cross-examine M.B. beyond what has been afforded him under the Protected Persons Statute. Purvis was not able to cross-examine M.B. in the same manner that most witnesses may be cross-examined, with their veracity fully tested in the adversarial process. But the Protected Persons Statute is Indiana's application of its law of evidence to account

for situations in which witnesses may not be available because of their youth or vulnerability, and the statutory opportunity for cross-examination is sufficient under the state and federal constitutions. *Pierce*, 677 N.E.2d at 49–50; *see also Crawford*, 541 U.S. at 69, 124 S.Ct. 1354.

The trial court properly applied the Protected Persons Statute, and we find that the trial court did not abuse its discretion in determining that M.B.'s statements to Shawn were sufficiently reliable to be admitted in evidence.

### E. Harmless Error

■■ Having ruled that the trial court properly admitted statements to Gray and Shawn as excited utterances and additional statements to Shawn under the Protected Persons Statute, we must determine whether the erroneous admission of M.B.'s statements to Officer Cuthbertson requires reversal. "When reviewing an erroneous evidentiary ruling by the trial court, we apply the harmless error rule, determining if the probable impact of the error, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Mitchell v. State*, 813 N.E.2d 422, 432 (Ind.Ct.App.2004), *trans. denied.* Improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact. *Allen v. State*, 787 N.E.2d 473, 479 (Ind.Ct.App.2003), *trans. denied.*

Officer Cuthbertson's testimony presented no information not already contained in Gray's and Shawn's testimony. His testimony was quite brief in comparison to theirs, and his recounting of M.B.'s statements on direct examination takes up less than two pages of transcript, in comparison to the lengthier recounting of events by Gray and Shawn. Because Officer

Cuthbertson's testimony about M.B.'s statements is cumulative of other evidence of M.B.'s statements, the error in admitting the officer's testimony is harmless. *Howard v. State*, 816 N.E.2d 948, 960 (Ind. Ct.App.2004), *reh'g denied; Allen*, 787 N.E.2d at 476.

To sum up the Court's holding on the admissibility of M.B.'s out-of-court statements, the trial court erroneously admitted Officer Cuthbertson's testimony because it recounted testimonial hearsay that was not cross-examined, but the error was harmless because the testimony was cumulative. The trial court properly admitted M.B.'s out-of-court statements to Gray and one of his statements to Shawn as excited utterances because they were made near the time of the stressful event while M.B. was under the effect of the event. The trial court also properly admitted M.B.'s other out-of-court statements to Shawn under the Protected Persons Statute. Purvis's claim of error arising from the admission of M.B.'s out-of-court statements provides no basis for reversal.

### II. Purvis's Letter

Purvis next argues that the trial court erroneously admitted as evidence a letter he wrote to the court while he was incarcerated pending trial. At trial, Purvis objected that the letter was irrelevant and burden-shifting; on appeal, he adds that the letter's admission violated his Fifth Amendment rights and characterizes that alleged error as fundamental. In the letter, Purvis complained about his representation, stating that his counsel has not investigated his alibi and that he would move to dismiss the charges for lack of evidence: "In-so-far-as there is no semen in the child's throat or anywhere else to support Count II ([M.B.], the alleged victim, told officers that Michael[6] ejaculated

---

6. "Michael" was an alias by which M.B. knew Purvis.

in his mouth), and there is no evidence to support Count I due to no sliva [sic] or anything else." State's Ex. 13.

 First, admitting the letter does not violate Purvis's Fifth Amendment rights. The Fifth Amendment states, in relevant part, that no one "shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amend. V. Here, Purvis made no compelled statement. He wrote the letter of his own free will. His own unforced action cannot serve as the basis for a claim under the Fifth Amendment. Purvis has cited no case finding a Fifth Amendment violation in circumstances such as these (in fact, he has cited no case finding a Fifth Amendment violation at all, as the only case he cites on this issue, *Holderfield v. State*, 578 N.E.2d 661 (Ind.1991), *reh'g denied*, holds that a second alibi notice filed in court can be admitted as evidence although the defendant pursued only the first alibi notice at trial). Admission of a defendant's voluntary statement is not a Fifth Amendment violation. *See, e.g., Ajabu v. State*, 693 N.E.2d 921, 930 (Ind.1998).

 Second, the letter is relevant. Evidence Rule 401 instructs that evidence is relevant if it has "any tendency" to make the existence of any fact that is of consequence to the outcome of the case more or less likely. The statement in the letter that "there is no semen in the child's throat or anywhere else" is relevant because the defendant claims knowledge—at least as of November 17, 2003, when he sent the letter—that there was no semen in M.B.'s mouth although the laboratory report showing that result was not completed until December 18, 2003. State's Ex. 12. The letter therefore tends to indicate that Purvis knew details about the crime (that is, that the perpetrator did not ejaculate, used a condom, or somehow disposed of the evidence of ejaculation) that he could only have known if he committed the crime or had other inside knowledge.[7]

The trial court committed no error in admitting the letter as evidence.

### III. 404(b) Evidence

 Purvis further complains that the trial court erroneously admitted testimony by two police officers that Purvis used the alias "Michael" and represented himself as a fifteen-year-old on other occasions. Tr. p. 296, 298. Purvis argues that the trial court's decision violated Evidence Rule 404(b) because it permitted evidence of prior bad acts to be admitted to show bad character or propensity.[8]

 The trial court properly admitted the testimony because it was relevant to

7. The trial court only stated that the letter was relevant because of its reference to the circumstances of the crime, not because of its allusion to a potential alibi. *See* Tr. p. 287–88. The State argued that the evidence relating to alibi was relevant and offered a bit of evidence to indicate that police found no evidence of the alibi to which Purvis alluded in the letter. *Id.* at 325. Because the letter is relevant on the issue of Purvis's knowledge about the crime, we need not address this alternative basis. We presume that the trial court (which heard this case without a jury) based its decision only on relevant evidence, and the trial court's own statements indicated its knowledge that some contents of the letter were irrelevant and that the State retained the

burden to prove every element of the crime. *Id.* at 288–89.

8. The transcript contains only one brief reference to Purvis's objection to this evidence under Rule 404(b). Tr. p. 293. The trial court apparently held a separate hearing on this issue and counsel and the court exchanged email on this topic. State's Ex. 16. The State does not argue that Purvis has waived this objection; nevertheless, it would be helpful to the Court for the parties to explain how an objection has been preserved when the transcript provides such scant evidence of preservation.

Purvis's identity. Purvis's previous use of the alias "Michael" and previous assertion that he was fifteen years old in connection with other police investigations was relevant to identity. *See, e.g., Hyppolite v. State*, 774 N.E.2d 584, 592 (Ind.Ct.App. 2002) (permitting admission of previously used aliases to show identity), *trans. denied.* His use of that alias and false age in the past was relevant to his identity as M.B.'s molester because he used the same alias and false age in his dealings with M.B. Moreover, while the evidence elicited from police officers about past investigations made it clear that Purvis had been the subject of police interest in the past, the officers never testified as to what potential crimes Purvis may have been suspected of or charged with, significantly limiting any potential prejudice from the evidence. Tr. p. 290–300; *see also Reynolds v. State*, 797 N.E.2d 864, 868 (Ind.Ct.App.2003) (addressing balance of probativeness and potential prejudice). Also, because there was no jury, we are confident that the trial court was able to overlook any prejudicial aspects of this evidence and concentrate solely on the probative portions of the testimony. *Helton v. State*, 624 N.E.2d 499, 513 (Ind.Ct. App.1993) ("In criminal bench trials, we presume that the court disregarded inadmissible testimony and rendered its decision solely on the basis of relevant and probative evidence."), *trans. denied.* There was no error.

### IV. Sufficiency of Evidence

 Additionally, Purvis argues that the evidence supporting his conviction is insufficient because M.B.'s disability renders the evidence he provided inherently suspect and his letter is "merely a protestation of innocence" and irrelevant. When examining sufficiency of evidence, we neither reweigh the evidence nor resolve questions of credibility. *Holman v. State*, 816 N.E.2d 78, 81 (Ind.Ct.App.2004), *trans. denied.* Rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn from that evidence. *Id.* We affirm if there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* To convict Purvis of Class A felony Child Molesting, the State had to prove beyond a reasonable doubt that Purvis was older than twenty-one and performed deviate sexual conduct with a child younger than fourteen. Ind.Code § 35–42–4–3.

Purvis's argument invites the Court to reject M.B.'s statements as well as corroborating evidence from several sources. The applicable standard of review precludes us from accepting his argument. The trial court properly admitted certain of M.B.'s statements as well as other evidence that a reasonable fact finder could conclude proved beyond a reasonable doubt that Purvis molested M.B. We affirm the trial court's determination that Purvis is guilty of Child Molesting as a Class A felony.

### V. Sentencing

 Purvis's final argument is that the fifty-year sentence given by the trial court was inappropriate.[9] This Court "may re-

---

9. Purvis does not argue that there was any error in the trial court's imposition of executed time on Purvis's probated sentences, its imposition of the sentence in this case consecutive to the other convictions, or under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.*

Notwithstanding Purvis' failure to make a *Blakely* argument, we note that such an argument would not have prevailed. The trial court found the following aggravators: (1) that prior attempts at rehabilitation have failed; (2) that only eight days passed between Purvis's release from prison on a child

vise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Although appellate review of sentences must give "due consideration" to the trial court's sentence because of "the special expertise of the trial bench in making sentencing decisions," *Bennett v. State*, 787 N.E.2d 938, 949 (Ind.Ct.App.2003), *trans. denied*, Appellate Rule 7(B) is "an authorization to revise sentences when certain broad conditions are satisfied." *Neale v. State*, 826 N.E.2d 635, 639 (Ind.2005).

In determining Purvis's sentence, the trial court discussed mitigating and aggravating factors as required by Indiana Code § 35–50–2–4. The trial court accepted as mitigating factors Purvis's "family history and his earlier status as a victim" of sexual abuse. Tr. p. 410. The trial court did not give significant weight to these factors because there had been two previous attempts to rehabilitate Purvis that were unsuccessful. *Id.* at 411.

The court found as a "significant aggravator" that only eight days had passed between Purvis's release from confinement on a previous molesting charge and his molesting of M.B. *Id.* The trial court also found as an aggravating factor that Purvis "groomed" his victim by learning about M.B. and his family and selecting a vulnerable victim who was "perhaps less likely to be able to relate what's happened to him." *Id.*

To summarize, the Court finds the aggravating factors, the fact that the Defendant ... [was] on probation for two prior molest cases, the fact that the conduct, the ingratiating conduct, the grooming conduct and then the molest itself occurred less than ten days after his release from the [Department of Correction]. The Court would summarize all of that by saying Mr. Purvis presents a threat to any child around whom he is. The Court finds ... all of those aggravating[,] and the sad part as Ms. Bowling notes is the Court finds that [Purvis] is powerless or his ability to choose otherwise seems greatly compromised by whatever has led him to this day. It is the Court's concern for the safety for the children in our county, as well as the fact that a short period of time within which this molest was committed after his release from the D.O.C.,

molesting conviction and his molesting of M.B.; (3) that he established trust with the family before the molestation and groomed the victim; (4) that Purvis has a criminal history; (5) that the nature and circumstances of the crime were such that the victim was particularly vulnerable because of his disabilities; and (6) that Purvis was on probation at the time of the offense. The trial court found two mitigators to which it chose not to afford significant mitigating weight—Purvis's family history and prior sexual abuse victimization. There is one aggravator that does not implicate *Blakely* because it was admitted by Purvis—that he was on probation at the time of the offense. *See Blakely*, 124 S.Ct. at 2537. There are two aggravators that do not implicate *Blakely* because they were prior convictions—Purvis's criminal history—or were derivative of that criminal history—that prior attempts at rehabilitation have failed. *See id.* at 2536 (indicating that prior convictions do not violate the *Apprendi/Blakely* line of cases); *Carson v. State*, 813 N.E.2d 1187, 1189 (Ind. Ct.App.2004) (observing that "aggravating circumstances that are simply derivative of that extensive history of convictions" do not implicate *Blakely* ). In the end, then, we have three aggravators that do not implicate *Blakely*—as such we need not reach the viability of the other three—and two mitigators to which the trial court judge assigned minimal weight. A single aggravating circumstance is sufficient to justify an aggravated sentence. *McNew v. State*, 822 N.E.2d 1078, 1082 (Ind. Ct.App.2005). We find no sentencing error under *Blakely*.

the fact that he's on probation, the fact that [M.B.] suffers from a condition that renders him of a mental capacity less than his age, all of those factors give the Court concern that other than an aggravated sentence could not fulfill the Court's duty to provide for the safety of our community.

*Id.* at 412–13.

We find that the fifty-year sentence the trial court imposed is appropriate to the nature of the offense and the character of the offender and that the trial court did not abuse its discretion in levying the maximum sentence. Although, as the trial court stated, Purvis appears unable to control his behavior, he has been adjudicated a three-time child molester whose most recent offense occurred just eight days after he was released from his previous imprisonment for child molesting. He calculated his behavior—from arriving on the scene with a dog that would attract children to bringing candy and cookies—to ingratiate himself with the family of a child whose disability rendered him more vulnerable to abuse and less able to testify against his abuser. The sentence is therefore appropriate to the nature of the offense (planned, calculated to victimize a vulnerable child, part of an unbroken pattern) and the character of the offender (a repeat child molester). Sadly, the trial court is correct that only Purvis's prolonged incarceration can adequately protect the public.

We are unpersuaded by Purvis's argument that his offense is not among the worst of the worst. Of course, some sex crimes are more violent or involve more victims than this one. But the repeat nature of the offense and the grooming and targeting of the victim place Purvis's crime in the same league as the worst sex offenses. The sentence is appropriate in light of these facts and Purvis's failure to respond to previous terms of incarceration. The trial court did not abuse its discretion in sentencing Purvis to fifty years' incarceration.

Affirmed.

SHARPNACK, J., and MAY, J., concur.